CITY OF WACO, Petitioner,

v.

ENVIRONMENTAL PROTECTION
AGENCY, Respondent.

No. 78–1897.

United States Court of Appeals,
Fifth Circuit.

June 26, 1980.

Fulbright & Jaworski, David J. Beck, Gary M. Lawrence, Ronald Dean Secrest, Houston, Tex., amicus curiae for petitioner.

Wiley W. Stem, Jr., Waco, Tex., for City of Woodway, Tex.

Gloria J. Ellis, Atty., Environmental Protection Agency, Angus Macbeth, Barbara

H. Brandon, Dept. of Justice, Land and Natural Resources Division, Washington, D.C., for respondent.

Before TJOFLAT and SAM D. JOHN-SON, Circuit Judges, and SEAR *, District Judge.

SEAR, District Judge:

The City of Waco has petitioned for review of the Environmental Protection Agency's (EPA) designation of McLennan County, Texas[1] as a nonattainment area for photochemical oxidants pursuant to § 107(d) of the Clean Air Act, 42 U.S.C. § 7407(d).[2] Because the EPA failed to comply with the procedural requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*, we remand to the agency for further proceedings.

The Clean Air Act amendments of 1970, P.L. 91–604, 84 Stat. 1676, directed the Administrator of the EPA to list all air pollutants which in his judgment pose a threat to the public health and welfare and to establish primary and secondary ambient air quality standards for each such pollutant defining the levels of air quality necessary to protect the public health and welfare from its adverse affects. §§ 7408–09.[3] Once ambient standards have been established, the statute requires each state to develop a detailed implementation plan to insure that the air quality within that state meets those standards. §§ 7410, 7502. The 1970 amendments required that the states meet the primary standards within three years from the date of EPA approval of the implementation plan and the secondary standards within a "reasonable time." P.L. 91–604, § 110(a)(2)(A).

Areas within many states failed to achieve compliance with the primary standards by the statutory deadlines,[4] and it became necessary for Congress to amend the Clean Air Act again in 1977 to establish new deadlines and to detail a state and local planning process employing strict federal review to insure that the new deadlines would be met. P.L. 95–95, 91 Stat. 685. The amended Act directed the states to submit to the EPA by December 5, 1977 a list of nonattainment areas[5] for all pollutants for which the agency had set primary standards. § 7407(d)(1). Within 60 days thereafter EPA was to promulgate these lists with any modifications it deemed necessary. § 7407(d)(2). The states were then required to develop implementation plans by January 1, 1979 for attaining the primary standards by December 31, 1982. P.L. 95–95, § 129(b), 42 U.S.C. §§ 7410, 7502.[6]

On January 9, 1978 the Texas Air Control Board submitted its initial list of nonattainment areas, which designated

---

\* District Judge of the Eastern District of Louisiana, sitting by designation.

1. The City of Waco is located in McLennan County.

2. The Clean Air Act is codified at 42 U.S.C. §§ 7401–7642. Unless otherwise specified, we will hereafter cite only the U.S. Code sections.

3. The pollutants for which primary and secondary standards have been set include sulfur oxides, particulate matter, carbon monoxide, hydrocarbons, nitrogen dioxide, lead and ozone. 40 C.F.R. §§ 50.4–50.12. During the period with which we are concerned on this appeal, the regulations referred to "photochemical oxidants" rather than "ozone".

4. H.R. Rep. 95–294, 95th Cong., 1st Sess. 207, U.S.Code Cong. & Admin.News 1977, p. 1077.

5. § 7501(2) defines the term "nonattainment area" for a listed pollutant as

"an area which is shown by monitored data or which is calculated by air quality modeling (or other methods determined by the Administrator to be reliable) to exceed any national ambient air quality standard for such pollutant."
An area which meets the air quality standard is known as an "attainment area", while those areas which cannot be classified on the basis of available data are designated as "unclassifiable." See § 7407(d)(1).

6. § 7502(a) provides that under certain conditions the deadline for attaining the primary standard for carbon monoxide and photochemical oxidant pollution may be extended until December 31, 1987.

McLennan County as "unclassifiable"[7] for photochemical oxidant pollution. Without notice or the opportunity for prior comment required by the APA,[8] the EPA changed the McLennan County classification for oxidants to "nonattainment" when it published its final list of state nonattainment areas on March 3, 1978. 43 Fed.Reg. 8962, 9037. As a substitute for pre-promulgation comment the agency provided a sixty-day period after publication for comment by interested parties. On September 1, 1978, after considering the comments submitted, the agency reaffirmed its nonattainment classification for McLennan County. 43 Fed.Reg. 40412, 40433.

The City of Waco challenges the March 3 redesignation on both procedural and substantive grounds. Because the EPA failed to follow the procedures of the APA, we remand on that basis and need not reach the substantive issues.

■ This resolution is mandated by our recent decision in *United States Steel Corp. v. United States Environmental Protection Agency*, 595 F.2d 207 (5 Cir. 1979), *modified on rehearing*, 598 F.2d 915 (5 Cir. 1979), which involved a challenge to the same March 3, 1978 EPA listing because of its redesignation of certain areas in Alabama as "nonattainment" for particulate matter. As in the case *sub judice* the EPA promulgated those redesignations without prior notice or opportunity for comment, instead providing a sixty-day post-promulgation comment period. The agency contended, *inter alia*, that the imminence of the Congressionally imposed deadlines for the submission of the state implementation plans for attainment of the primary ambient standards justified this procedural course under the "good cause" exception of 5 U.S.C. § 553(b)(B)[9] and that the sixty-day

post-promulgation comment period cured whatever procedural error may have been committed. We rejected the agency's § 553(b)(B) contention and held:

> "[T]he mere existence of deadlines for agency action, whether set by statute or court order, does not in itself constitute good cause for a § 553(b)(B) exception. *American Iron and Steel Institute v. EPA*, 568 F.2d 284, 292 (CA3 1977); *Shell Oil Co. v. FEA [Federal Energy Administration]*, 527 F.2d 1243, 1248 (TECA 1975)."

595 F.2d at 213. Likewise we found no merit in the second argument, reasoning that acceptance of the EPA's position would allow any agency to dispense with pre-promulgation notice and comment whenever it so desired. *Id.*, at 215. *U.S. Steel* is indistinguishable from the instant case on these procedural issues. The same arguments made there are made here, and having been rejected in *U.S. Steel*, they must also be rejected here.

Respondent contends that a remand is nonetheless unnecessary because events subsequent to the filing of the petition for review have rendered the issues raised by this appeal moot. On February 8, 1979 the Administrator relaxed the primary and secondary ambient air quality standards for photochemical oxidants, 44 Fed.Reg. 8220, and as a result the State of Texas requested that McLennan County be redesignated as an attainment area for that pollutant. 44 Fed.Reg. 58922. In a Suggestion of Mootness filed on April 9, 1980, just five days before oral argument, counsel for EPA revealed that on the previous day the Administrator had modified the McLennan County designation for oxidants from "nonattainment" to "attainment or unclassifiable".

---

7. See n. 5, *supra.*

8. 5 U.S.C. § 553 requires that before an administrative agency promulgates any rule, the proposed rule must first be published in the Federal Register, and interested persons must be given an opportunity to participate in the rulemaking process through submission of written data, views and arguments. Attainment designations are "rules" within the meaning of

§ 553. *United States Steel Corp. v. United States Environmental Protection Agency*, 595 F.2d 207, 213 (5 Cir. 1979). An agency need not comply with these requirements if it finds for good cause that notice and public comment are "impracticable, unnecessary, or contrary to the public interest." § 553(b)(B).

9. See n. 8, *supra.*

The agency contends that there is no further relief which petitioner could receive on remand and that the controversy has therefore been rendered moot.

▮ In order for voluntary cessation of allegedly illegal conduct to render a case moot, there must be no reasonable expectation that the alleged violation will recur, and intervening events must have completely eradicated the effects of the conduct. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). This case may well be moot under that standard, but the present record is inadequate to enable us to make such a determination. Indeed, there is no record from which it would be possible for us to decide whether a further reclassification of McLennan County to nonattainment status is imminent. However, the agency should consider the question of mootness on remand.[10]

During the pendency of this appeal, petitioner moved for the assessment of attorney's fees for the expenditures incurred in contesting the EPA's actions. In its Suggestion of Mootness the agency admits that an award of fees is appropriate and has signified its willingness to negotiate the size of the award. If the parties are unable to agree upon the amount of the fee to be awarded, we may later be called upon to determine an appropriate one. However, any resolution by the Court at this time would be premature, and the City of Waco's motion is therefore denied.

The petition to set aside the § 7407(d) designation is GRANTED, and the matter is REMANDED to the Environmental Protection Agency for reconsideration of the designation in accordance with the procedural requirements of the Administrative Procedure Act.

**10.** Although the EPA may initiate rulemaking proceedings at any time it deems such action necessary to carry out its statutory mandate, § 7601(a), the fact that the reclassification at issue here occurred only six days before oral argument must be considered on remand in determining the probability of resumption of the allegedly illegal conduct. See *United States*

*v. Oregon State Medical Society*, 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978 (1952). In view of the incomplete record which is before us, the timing of the reclassification cannot form a basis for our decision today.