Frances C. BARLOW et al., Plaintiffs,

v.

**MARION COUNTY HOSPITAL DISTRICT, d/b/a Munroe Memorial Hospital et al., Defendants.**

No. 80–15–Civ–Oc.

United States District Court,
M. D. Florida,
Ocala Division.

July 29, 1980.

Judy R. Collins, Gainesville, Fla., for plaintiffs.

James A. Cornelius, Ocala, Fla., for Munroe Memorial Hospital.

John E. Lawlor, III, Asst. U. S. Atty., Jacksonville, Fla., for HEW.

James G. Mahorner, Asst. Gen. Counsel, Dept. of Health & Rehabilitative Services, Tallahassee, Fla., for State of Florida.

## OPINION

CHARLES R. SCOTT, District Judge.

Before the Court are three motions: two motions to dismiss and one motion denominated a motion for summary judgment

which the Court will consider as a motion to dismiss. The motions will be denied, but the plaintiffs will be required to amend their complaint.

This action, which purports to be a class action, is brought by several former patients of Munroe Memorial Hospital against a number of defendants which can be conveniently separated into three groups. The first group consists of the hospital special tax district, Marion County Hospital District (the Hospital); the hospital administrator; and the members of the board of trustees of the hospital district. This group will be referred to as the hospital defendants. The second group is composed of the Florida Department of Health and Rehabilitative Services and the Secretary and medical facility specialist of that department. The second group will be referred to as the State defendants. The third and final group consists of the United States Department of Health, Education and Welfare (HEW) and the Secretary of HEW.[1] They will be referred to as the federal defendants.

Reduced to its simplest terms, the complaint alleges that the hospital defendants failed to provide the plaintiffs with free or reduced-cost medical services to which they were allegedly entitled as qualified, indigent persons under Title VI of the Public Health Service Act, as amended, 42 U.S.C. § 291 *et seq.*, commonly known as the Hill-Burton Act.[2] Each of the named plaintiffs received treatment for which they were unable to pay and subsequently had judgments entered against them in state court as a result of the Hospital's collection efforts to recover the full cost of treatment. With regard to the hospital defendants, plaintiffs request the following relief:

(1) a declaratory judgment that these defendants violated the Hill-Burton Act

and the rights of the plaintiffs to equal protection and due process,

(2) an injunction prohibiting continued violation of the Act and further collection activities of the type alleged, and

(3) a mandatory injunction requiring satisfaction of judgments obtained, compensation for money received in payment, correction in the future of any past deficit in the provision of free or reduced-cost services, cessation of all debt collection efforts, and the provision of written notice and eligibility determinations with regard to the plaintiffs and the class of persons which they purport to represent.

The complaint further alleges that the state and federal defendants failed to comply with their statutory duties to monitor or investigate and enforce compliance with the Hill-Burton Act and pertinent regulations. Plaintiffs seek the following relief against the state and federal defendants:

(1) a declaratory judgment that the state and federal defendants violated the Hill-Burton Act and the right of the plaintiffs to equal protection and due process,

(2) an injunction prohibiting future violations, and

(3) a mandatory injunction requiring the state and federal defendants to devise and submit for their respective agencies a plan for court approval, detailing the manner in which future monitoring or investigation and enforcement of compliance will be carried out.

The complaint states that this action arises under the Fifth and Fourteenth Amendments to the Constitution, the Hill-

---

1. The Department of Health, Education and Welfare was redesignated the Department of Health and Human Services last year with the creation of the Department of Education. The Court will refer to the agency by its former name, which was in effect at all times pertinent to this complaint.

2. As discussed *infra*, the Hill-Burton Act was reenacted, albeit with substantial changes, in 1975 as the National Health Planning and Resources Development Act, which became Title XVI of the Public Health Service Act, 42 U.S.C. § 300k *et seq.* The Court will use the common name "Hill-Burton Act" to refer to both acts, except where necessary to distinguish between the two.

Burton Act, and the Civil Rights Act of 1871, 42 U.S.C. § 1983. The plaintiffs invoke the Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343.

### Legislative History [3]

The Hill-Burton Act was intended to help the states assess their need for additional medical facilities adequate to serve all their citizens and to provide federal money to partly defer construction costs. Public Health Service Act, Title VI, §§ 600 and 601, 42 U.S.C. §§ 291 and 291a (1974). The language of the Act denotes shared state and federal agency responsibility. Initially, the Surgeon General was given supervision over the Hill-Burton Act, with authority to approve state plans for its implementation. This responsibility later passed to HEW. The federal agency was authorized to issue regulations requiring, as a prerequisite to the approval of any hospital application, that the hospital give assurances to the state agency that it would provide service to the entire community without discrimination (the community service assurance), and that a reasonable volume of services would be made available to indigent persons (the uncompensated service assurance). 42 U.S.C. §§ 291c(e)(1) and (2). The instant action concerns the so-called uncompensated service assurance.

The uncompensated service assurance played only a minor role until 1972, when a series of lawsuits apparently moved HEW to issue new regulations which transformed the statutory "reasonable volume of services" into more specific "presumptive compliance levels" and provided for the en-forcement of compliance primarily through the state agencies. 42 C.F.R. §§ 53.-111(b)(6), (d), and (i). Huddleston, *Due Process for Hill-Burton Assisted Facilities*, 32 Vand.L.Rev. 1469, 1472–73 (1979); Rosenblatt, *Health Care and Administrative Law: A Structural Approach*, 88 Yale L.J. 243, 264–70 (1978). The regulations were further amended in 1975 to require that eligibility for uncompensated services be determined before services are rendered in routine cases and that hospitals post notices of the availability of these services. 42 C.F.R. §§ 53.111(f) and (i). These are, for the most part, the regulations which were in effect during the periods alleged in the complaint in the instant case.

The statutory provisions concerning enforcement of the uncompensated service assurance, however, changed significantly in 1975. When funding for the original Hill-Burton Act ran out in 1974, Congress replaced it with the National Health Planning and Resources Development Act of 1974, Title XVI of the Public Health Service Act, as amended, 42 U.S.C. § 300k *et seq.* 43 Fed.Reg. 49,954–55 (1978). Section 1612(c) of Title XVI, 42 U.S.C. § 300p–2(c) [redesignated Section 1627, 42 U.S.C. § 300s–6] shifted to HEW the duty to investigate and enforce compliance and provided for a private civil action against facilities to enforce compliance.[4] 43 Fed.Reg. 49,955 (1978). It would appear, then, that the regulations in effect at all times pertinent to the events which spawned the instant complaint were based upon statutory authority superseded in part by the enactment of Title XVI. Some four years later, in 1979, HEW pro-

---

3. As noted in text, the Court's research was aided by two comprehensive articles expressing contrasting points of view concerning the intent and impact of the Hill-Burton Act. Huddleston, *Due Process for Hill-Burton Assisted. Facilities*, 32 Vand.L.Rev. 1469 (1979); Rosenblatt, *Health Care Reform and Administrative Law: A Structural Approach*, 88 Yale L. J. 243 (1978). A third article of potential value was unavailable at the time of this writing. Rose, *Federal Regulation of Services to the Poor Under the Hill-Burton Act: Realities and Pitfalls*, 70 Nw.U.L.Rev. 168 (1975).

4. Prior to 1975, the Hill-Burton Act did not explicitly provide for a private civil action to enforce compliance. The Fifth Circuit, however, was among those courts which implied a private right of action for indigent persons claiming denial of uncompensated medical services under the Act. *Saine v. Hospital Authority of Hall Co.*, 502 F.2d 1033, 1034 (5th Cir. 1974).

mulgated extensive regulations implementing the new statutory authority.[5]

### The Instant Case

The complaint goes beyond an action to require the hospital to abide by the assurances which it gave in order to receive federal assistance under the Hill-Burton Act, although that is certainly the central purpose of the lawsuit. The plaintiffs also ask the Court to remedy the alleged failure of the state and federal agencies, to which Congress gave the responsibility for implementing the Hill-Burton Act, to take all reasonable steps to prevent a denial of uncompensated medical services to eligible indigent persons.

■ The hospital defendants assert that the attempt to enforce compliance and obtain other relief against them in this lawsuit must be dismissed because this Court lacks jurisdiction over the subject matter and because the complaint fails to state a claim for which relief can be granted, pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P. Addressing the Rule 12(b)(6) basis first, the claim that the hospital defendants have violated their assurances under the Hill-Burton Act and otherwise violated the terms of compliance with the federal statute and regulations is a statutory claim for which this Court may grant relief. Public Health Services Act § 1612, 42 U.S.C. § 300p–2(c) [redesignated § 1627, 42 U.S.C. § 300s–6]. 28 U.S.C. § 1331. Moreover, the claim that the hospital defendants have deprived eligible persons of the right to the benefits of this Act without due process of law or that a class of those persons have been denied the laws' equal protection is certainly a constitutional claim for which this Court may grant relief. *Newsom v. Vanderbilt University*, 453 F.Supp. 401 (M.D.Tenn. 1978). Qualified indigent persons are lawful beneficiaries of the Hill-Burton Act as it pertains to uncompensated medical services and may not be deprived of those benefits in violation of the Fourteenth Amendment.

*Id.* A claim under the Fourteenth Amendment, of course, can also be the subject of a civil rights suit pursuant to 42 U.S.C. § 1983, if the claim meets the other requirements of that statute. Likewise, the Supreme Court has recently removed any doubt that a claimed deprivation of civil rights based upon a violation of a federal statute can be brought under § 1983. *Maine v. Thiboutot*, —— U.S. ——, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (§ 1983 encompasses claims based on purely statutory violations of federal law, such as Social Security Act).

■ The hospital defendants argue that ⅄ the complaint nevertheless fails to state a claim under § 1983 because the allegations do not plead all of the essential elements and because the plaintiffs do no allege that the hospital defendants' actions implemented or executed "a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," citing *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). With regard to the form of the pleading, the Court notes that the hospital defendants do not assert a deficiency of factual allegations but rather an absence of explicitly stated legal elements which relate the facts alleged to the law which the plaintiffs expect to be applied. The Court agrees with that assessment. The complaint here is somewhat long and repetitious, and it fails to state the claims in terms of their essential elements. The complaint alleges all the facts, however, that are necessary to the claims. It merely leaves to the Court and the opposing parties the task of inferring the elements of each claim from the facts.

■ Some courts have held that allegation of the legal elements of a claim is an essential part of compliance with the notice requirements of Rule 8 Fed.R.Civ.P. *See, e. g., Higginbotham v. Mobil Oil Corp.*, 302 F.Supp. 857, 861 (E.D.La.1969) (suit in ad-

---

5. One commentator assails the post-1974 statutory and regulatory changes for having transformed the Hill-Burton Act into an alternative source of Medicaid, contrary to the intent of the 79th Congress. Huddleston, in text *supra* at 1479, 1496.

miralty) *quoting* 1 A Barron & Holtzoff 119. Others, while giving lip service to the same rule, have excused the omission as a technical deficiency, where the elements were plainly inferable from the facts alleged. *Rivera v. NMU Pension & Welfare and Vacation Plan*, 288 F.Supp. 874, 878 (E.D.La.1968) (suit under Labor Management Relations Act). The Court is inclined to follow the latter rationale in evaluating a civil rights complaint which alleges all the essential facts. It is certainly preferable that claims be "spelled out" in the complaint. *See Case v. State Farm Mutual Auto Insurance Co.*, 294 F.2d 676 (5th Cir. 1961). The instant complaint, however, does provide the defendants with fair notice of the plaintiffs' claim. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The other deficiencies in the complaint result only in delay in the disposition of pretrial motions and are not grounds for dismissal.

Plaintiffs' failure to allege that defendants' actions were taken pursuant to official policy is not fatal. The complaint alleges facts which clearly suggest that defendants' practices were in accordance with "custom or usage" of the governing body. The Supreme Court has explicitly recognized that such practices are adequate ground for a claim under § 1983, even though they have not received any formal approval. *Monell, supra*, 436 U.S. at 690–91, 98 S.Ct. at 2036.

In summary, the Court concludes that the complaint states claims for violation of federal law and the Fourteenth Amendment for which the Court may grant relief. Further, the Court concludes that both claims may form the basis for an additional civil rights claim under § 1983 for which the Court may grant relief.

We turn now to the question whether this Court has jurisdiction, the power to render a decision on these claims. As a matter of convenience, the Court will here consider the jurisdictional issues raised by both the hospital defendants and the State defendants because the sole thrust of the motion to dismiss filed by the State defendants is lack of jurisdiction, and the arguments of the two groups parallel and complement each other.

Jurisdiction over this action must come by way of 28 U.S.C. § 1343,[6] the so-called jurisdictional counterpart of 42 U.S.C. § 1983, or 28 U.S.C. § 1331,[7] the "federal question" jurisdictional provision. Defendants argue that this Court has no jurisdiction under § 1343 to consider a claim pursuant to 42 U.S.C. § 1983 when that claim is based solely on an alleged violation of an act of Congress which neither provides for "equal rights" within the meaning of § 1343(3) nor provides for "the protection of civil rights" within the meaning of § 1343(4). *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) (claim based on Social Security Act).[8] Further, the defend-

---

**6.** In pertinent part, 28 U.S.C. § 1343 provides: The district courts shall have original jurisdiction over any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

28 U.S.C. § 1343(3) and (4).

**7.** In pertinent part, 28 U.S.C. § 1331 provides: The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States except that no such sum or value shall be required in any action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

28 U.S.C. § 1331(a).

**8.** Defendants also urge that the jurisdictional issue has been decided in an unpublished per curiam opinion of the Fifth Circuit in *Udell v. Page*, No. 79–1747 (5th Cir. Sept. 10, 1979), which cited *Chapman v. Houston Welfare Rights Organization, supra* for the

ants assert that 28 U.S.C. § 1331 provides no basis for jurisdiction in the instant case in which the amount in controversy does not exceed $10,000. Consideration of the latter question is unnecessary because the Court concludes that jurisdiction is provided by § 1343 and the doctrine of pendent jurisdiction.

■ The defendants are correct in asserting that § 1343 is not a source for federal jurisdiction in a suit brought solely to enforce compliance pursuant to 42 U.S.C. § 300p–2(c) [42 U.S.C. § 300s–6], even though such a purely statutory claim can be the basis of a civil rights claim under 42 U.S.C. § 1983. The Supreme Court explained this apparent incongruity in *Maine v. Thiboutot, supra*:

> There is no inherent illogic in construing § 1983 more broadly than § 1343(3) was construed in *Chapman v. Houston Welfare Rights Organization, supra*. It would only mean that there are statutory rights which Congress has decided cannot be enforced in the federal courts unless 28 U.S.C. § 1331(a)'s $10,000 jurisdictional amount is satisfied.

—— U.S. at ——, n.6, 100 S.Ct. at 2506. The language of § 1343 limits federal jurisdiction over § 1983 lawsuits based solely upon the alleged deprivation of rights, privileges, or immunities secured by laws. Like § 406(e)(1) of the Social Security Act, 42 U.S.C. § 606(e)(1), which the Supreme Court considered in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the Hill-Burton Act is not one which provides for equal rights or protects civil rights. The Act "does not deal with the concept of 'equality' or with the guarantee of 'civil rights.'" *Id.* 441 U.S. at 621, 99 S.Ct. at 1917, 60 L.Ed.2d at 524. Its provisions for uncompensated medical service are analogous to the "emergency assistance and payments necessary to provide food and shelter" under the pertinent provisions of the Social Security Act in *Chapman, supra. Id.* The Supreme Court concluded that it was "inappropriate to read the jurisdictional provisions [of §§ 1343(3) and (4)] to encompass new claims which fall well outside the common understanding of their terms." *Id.* Thus, a plaintiff with a civil rights suit based solely on 42 U.S.C. § 300p–2(c) [42 U.S.C. § 300s–6] must either meet the $10,000 requirement of federal question jurisdiction under 28 U.S.C. § 1331 or take the claim to state court.

■ The instant action is not based solely upon a statutory claim, however. As previously noted, plaintiffs have also stated a constitutional claim against the hospital and state defendants for violation of the Fourteenth Amendment. 28 U.S.C. § 1343 imposes no limitation upon the jurisdiction of the federal court to consider § 1983 civil rights claims based upon rights, privileges, or immunities secured by the Constitution. Under these circumstances, the Supreme Court's opinion in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) controls.

In *Hagans v. Lavine*, AFDC recipients brought a class action challenging a New York State regulation permitting recoupment of certain AFDC payments which the plaintiffs claimed violated the Social Security Act, pertinent HEW regulations, and the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs alleged authority and jurisdiction under § 1983, § 2201 and § 1343(3) and (4). The district court found the Fourteenth Amendment claim to be substantial and took pendant jurisdiction over the statutory claim. On appeal, the Second Circuit held that the Fourteenth Amendment claim was insubstantial and that, therefore, the district court lacked jurisdiction over both claims. The Supreme Court granted certiorari for the specific purpose of considering the jurisdictional question.

proposition that 28 U.S.C. § 1343 provides no jurisdictional basis for an action under 42 U.S.C. § 601, *et seq.* and § 1983, and directed the district court to reconsider its jurisdiction. In light of the Fifth Circuit's subsequent dismissal of that case on the ground of mootness without reconsideration of the jurisdictional issue, the Court concludes that *Udell v. Page* is of no precedential value. 621 F.2d 439 (5th Cir.1980)(table of decisions without published orders).

The Court reversed the Second Circuit decision and held that since § 1983 embraced the plaintiff's substantial constitutional claim and § 1343(3) conferred jurisdiction on the district court to entertain that claim, the district court could also hear the remaining statutory claim as a matter of pendent jurisdiction. 415 U.S. at 535–36, 94 S.Ct. at 1378–1379.[9] In such circumstances, the statutory claims should be decided first, and the constitutional claim should not be reached if the statutory claim is dispositive. Id. at 543, 94 S.Ct. at 1382. The Court further noted that the argument for exercising pendent jurisdiction is particularly strong where the pendent claim is one of federal law and is only beyond the jurisdiction of the district court for failure to satisfy the amount in controversy requirement of 28 U.S.C. § 1331. Id. at 545–48, 94 S.Ct. at 1383–1385. Where the pendant claim is a federal claim, the considerations of comity and preference for state court decisions on state law, voiced in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) and subsequent cases, which have been interpreted to favor discretionary refusal to hear pendent state claims, are wholly irrelevant. Id. Considering the instant case in light of Hagans v. Lavine, the Court concludes the plaintiffs have stated substantial constitutional claims, that 28 U.S.C. § 1343 affords jurisdiction over those claims, and that the Court should take pendent jurisdiction over the remaining statutory claims.

■ The Court's conclusion is not significantly altered by defendants' arguments concerning the effect of plaintiffs' failure to allege that they have complied with the administrative preconditions to a private civil action contained in 42 U.S.C. § 300p–2(c) [42 U.S.C. § 300s–6]. In pertinent part, the statute provides:

An action to effectuate compliance with any such assurance may be brought by a person other than the Secretary only if a complaint has been filed by such person with the Secretary and the Secretary has dismissed such complaint or the Attorney General has not brought a civil action for compliance with such assurance within six months after the date on which the complaint was filed with the Secretary.

Defendants claim that the effect of this provision is to vest primary jurisdiction to enforce compliance with assurances given under the Hill-Burton Act in the Secretary of HEW and that plaintiffs lack standing to bring this suit because they have failed to allege exhaustion of the prescribed administrative remedy. Further, defendants urge that plaintiffs are estopped to assert a denial of due process and equal protection when they have not availed themselves of the administrative remedy prescribed in the Act.

The Court could perhaps agree with this last appeal to equity if the plaintiffs' claims simply challenged the inadequacy of the mandatory administrative remedy. In that situation it would be unlikely that plaintiffs could allege an injury in fact. Here the plaintiffs urge a denial of due process and equal protection in the first instance, in the denial of uncompensated medical services. Thus, the Court finds the estoppel argument inapplicable in the instant case.

The defendants' other argument, whether discussed in terms of exhaustion of an administrative remedy or as a matter of primary jurisdiction, is well taken with regard to the statutory claim. Section 1612 of Title XVI of the Public Health Service Act, 42 U.S.C. § 300p–2(c) [§ 1627, 42 U.S.C. § 300s–6] places primary responsibility for investigating and enforcing compliance

---

9. Concerning substantiality of a claim, the court stated that a federal court cannot entertain claims "so attenuated and unsubstantial as to be absolutely devoid of merit," citing Newburyport Water Co. v. Newburyport, 193 U.S. 561, 24 S.Ct. 553, 48 L.Ed. 795 (1904) and other cases. 415 U.S. at 536–37, 94 S.Ct. at 1379. The court reiterated that a question may be unsubstantial if it is "obviously without merit"

or if "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." 415 U.S. at 536–38, 94 S.Ct. at 1379, quoting Ex Parte Poresky, 290 U.S. 30, 31–32, 54 S.Ct. 3, 4–5, 78 L.Ed. 152 (1933).

upon the Secretary of HEW. 43 Fed.Reg. 49,954–55 (1978). *See Huddleston, supra* at 1474; *Rosenblatt, supra* at 285. The private right of action established by the provisions of Section 1612, quoted above, appears to be a narrow one, exercisable only against the offending facilities.[10] *See Huddleston, supra* at 1474; *Rosenblatt, supra* at 285. Moreover, an examination of the case law reveals that federal courts have consistently held that plaintiffs seeking to enforce compliance must first pursue administrative remedies before bringing a civil action.[11] *Lugo v. Simon,* 453 F.Supp. 677, 683–85 (M.D. Ohio 1978); *Gordon v. Forsyth County Hospital Authority, Inc.,* 409 F.Supp. 708 (M.D.N.C.1976) *reversed on other grounds* 544 F.2d 748 (4th Cir.) *See Newsom v. Vanderbilt University,* 453 F.Supp. 401, 405 (M.D.Tenn.1978) (statute proscribes when individual civil action is ripe); *Corum v. Beth Israel Medical Center,* 373 F.Supp. 558 (S.D.N.Y.1974). On the other hand, none of these cases were brought in the context of a civil rights suit.

The plaintiffs have attempted to distinguish the instant case from those requiring exhaustion of administrative remedies by pointing to the broad scope of the remedies they seek. The Court agrees that the remedies sought here are somewhat broader than those in other cases and that some are beyond the power of the Secretary of HEW

to rectify, but, as to those matters which the Secretary is empowered to remedy, the Court finds that Congress has commanded deference to the agency's jurisdiction in terms that are unmistakable.

Plaintiffs have failed to demonstrate that the circumstances of the instant case bring it within one of the traditional exceptions to the exhaustion requirement. As noted above, only those remedies which provide a genuine opportunity for adequate relief need be exhausted. *Hodges v. Callaway,* 499 F.2d 417, 420–21 (5th Cir. 1974). There is no showing here that the potential administrative remedy would be inadequate with respect to the enforcement of compliance against the facility, which is the central though not the sole claim in this action. *Cf., Gibson v. Berryhill,* 411 U.S. 564, 575, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973) (inadequacy of administrative remedy identical with the merits of plaintiff's lawsuit). Moreover, the fact that the complaint includes some claims which the administrative agency cannot resolve and seeks some remedies which the administrative agency cannot provide does not preclude application of the exhaustion requirement to the other claims. *Von Hoffburg v. Alexander,* 615 F.Supp. 633 at 640–641 (5th Cir. 1980). Nor does the alleged failure of HEW to act on

---

**10.** At the hearing on June 25, 1980, the Hospital defendants also argued that the remedy provided by Congress in Section 1612 [1627] was intended to be an exclusive remedy. The Court's research has disclosed no indication of any such intent, and the defendants have offered no legal authority for their assertion of exclusivity. *Cf. Adickes v. Kress & Co.,* 398 U.S. 144, 150 n. 5, 90 S.Ct. 1598, 1604–1605 n. 5, 26 L.Ed.2d 142 (1970) (Public Accommodations Act § 207(b) includes specific, express provisions of exclusivity in order to avoid potential alternative liability under 42 U.S.C. § 1983). Accordingly, the Court can assign no merit to the defendants' exclusivity argument.

**11.** The only exception appears to be *Lugo v. Simon,* 426 F.Supp. 28 (M.D. Ohio 1976), a prior opinion in the same case cited in text. In this earlier opinion, the district court refused to dismiss the complaint on the basis of defendant HEW's argument that primary jurisdiction was in the state Hill-Burton agency. There was no discussion of any statutory complaint proce-

dure or requirement. The court noted, however, that if compliance were the only issue, there could be no doubt that the court lacked jurisdiction. Because the complaint made allegations against the state and federal agencies responsible for overseeing the Hill-Burton program as well, the district court retained jurisdiction over all of the issues presented. 426 F.Supp. at 32.

Two years later in the same case, the court dismissed plaintiffs' Title VI compliance claims against the hospital and its administrators for plaintiffs' failure to exhaust the administrative remedies created by the complaint procedures in Title XVI, 42 U.S.C. § 300p–2(c). The court applied these statutory requirements even though the complaint procedures had been enacted during the pendency of the action. Thus, it appears that the earlier opinion recorded at 426 F.Supp. 28 is entitled to little, if any, persuasive weight on the issue of whether exhaustion of administrative remedies is required.

the complaints of two of the plaintiffs demonstrate that pursuit of administrative remedies would be futile. *Cf., McNeese v. Board of Education*, 373 U.S. 668, 676, 83 S.Ct. 1433, 1438, 10 L.Ed.2d 622 (1963) (available remedy was at best only indirect and too tenuous); *Williams v. Board of Regents*, 629 F.2d 993, at 997 n. 6 (5th Cir. 1980) (exhaustion not considered because of nature of the grievance and initial cold reception of the grievance). *See also Von Hoffburg v. Alexander, supra* at 638–640. Finally, plaintiffs have not alleged any harm that would constitute irreparable injury of the type which led the Supreme Court to make an exception to the exhaustion doctrine in *Oklahoma Natural Gas Co. v. Russell*, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659 (1923).

■ The Court is also of the opinion that the statutory preconditions to a private civil suit in the instant case cannot be avoided by bringing this action under § 1983. It is true that the Supreme Court has relaxed the requirement to exhaust state administrative and judicial remedies prior to bringing a civil rights suit. *Houghton v. Shafer*, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Damico v. California*, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *McNeese v. Board of Education, supra.* Likewise, the Fifth Circuit has recently reiterated its rule that exhaustion of state remedies is unnecessary to maintain a § 1983 action. *Ehlers v. City of Decatur*, 614 F.2d 54 (5th Cir. 1980); *Patsy v. Florida International University*, 612 F.2d 946 (5th Cir. 1980). We are not concerned here with state administrative or judicial remedies, however. This case presents the question whether, with respect to a § 1983 claim based upon a federal statute, the plaintiff is required to comply with administrative procedures prescribed in that statute in order to have standing to bring a private civil rights action in federal court. The provisions of 42 U.S.C. § 300p–2(c) [300s–6] set forth congressionally mandated prerequisites to the filing of a private civil suit to enforce compliance with the Hill-Burton

Act. In light of the legislative history and the previous case law concerning enforcement of compliance, these provisions must be accorded their jurisdictional implications: there is no private right of action under the Hill-Burton Act until the preconditions of § 300p–2(c) [§ 300s–6] have been met. There being no right of action under the statute itself in the absence of compliance with the pre-conditions, the Court is of the opinion that there can be no right of action under § 1983 unless plaintiffs allege compliance with the statutory preconditions.

This conclusion is not inconsistent with § 1983 nor is it at odds with the rule in the Fifth Circuit eliminating the exhaustion requirement in § 1983 cases. In § 1983 Congress intended to establish a remedy separate and independent from other remedies that might also be available. *Board of Regents v. Tomanio*, —— U.S. ——, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). A rule eliminating the exhaustion requirement with regard to state administrative agencies is justified in order to preclude a § 1983 defendant from creating a statutory or regulatory hindrance to plaintiff's access to the courts under § 1983 to vindicate a constitutional right. *See Ehlers v. City of Decatur, supra* at 56. In such a case, "the federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape, supra*, 365 U.S. at 183, 81 S.Ct. at 482. That rationale, however, does not apply with equal force in the instant case. The § 1983 statutory claim is dependent upon the underlying statute for the creation of a cause of action. This is not a situation in which an otherwise complete claim is subjected to a preliminary disposition by an administrative agency. *Cf., e. g., Ehlers v. City Decatur, supra* (ante-litem notice statute held unconstitutional as applied to § 1983 action). The right of a private citizen to sue under this federal statute does not even arise until the federal agency has had an opportunity to act. *Compare* 42 U.S.C. § 300p(c) [3000s–6] *with* § 706(f)(1)

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(1).

The Court also notes that one line of cases has preserved the necessity for exhaustion of administrative remedies in certain circumstances in civil rights cases. *Penn v. Schlesinger*, 497 F.2d 970 (5th Cir. 1974) (en banc decision on § 1981 suit against federal defendants) (adopting dissent by Godbold, J. at 490 F.2d 700, 707–14 (5th Cir. 1973)) *cert. denied* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385; *Beale v. Blount*, 461 F.2d 1133 (5th Cir. 1973). *See Eisen v. Eastman*, 421 F.2d 560 (2d Cir. 1969). The Court concludes that the rationale, if not the circumstances, in these opinions is applicable here. Accordingly, the Court holds that a claim under § 1983 based upon the provisions of 42 U.S.C. § 300p–2(c) [§ 300s–6] must allege compliance with the administrative preconditions to a private suit set forth in the statute in order to be viable.

Plaintiffs correctly urge that it is not necessary for each member of an alleged class to exhaust administrative remedies in order for a class action to be maintained. *Eastland v. Tennessee Valley Authority*, 553 F.2d 364, 372 (5th Cir. 1977) citing *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir. 1968). It is generally agreed, however, that exhaustion by at least one member seeking to represent the class is a necessary prerequisite for a class action. *Swain v. Hoffman*, 547 F.2d 921, 924 (5th Cir. 1977) citing *Phillips v. Klassen*, 502 F.2d 362, 369 (D.C. Cir. 1974); *Coppotelli v. Howlett*, 76 F.R.D. 20, 22 (E.D.Ill.1977). Plaintiffs' response to defendants' motion to dismiss includes an affidavit which indicates that at least two of the named plaintiffs have complied with the administrative procedure required by the Act. Further, at the hearing on these motions the federal defendants agreed that plaintiffs had exhausted the administrative procedure. Therefore, the only remaining step would appear to be an amendment of the complaint. The Court finds, therefore, that this is not a circumstance which calls for a dismissal. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### The Federal Defendants

The federal defendants argue two grounds for dismissal of this case: mootness and lack of standing.[12] With regard to standing, the federal defendants direct the Court to four separate inquiries concerning standing which were identified by the District of Columbia Circuit in *Harrington v. Bush*, 553 F.2d 190 (D.C. Cir. 1977):

(1) whether there is an injury in fact, economic or otherwise,

(2) whether there are interests which are arguably within the zone of interests protected or regulated by the statute

12. The federal defendants presented their motion as one for summary judgment. It is sometimes difficult to distinguish between Rule 56 and Rule 12(b)(6) motions. The motion for summary judgment, however, addresses the merits of a claim. Mootness and lack of standing are generally considered to challenge the court's subject matter jurisdiction. A summary judgment motion is an inappropriate vehicle for challenging subject matter jurisdiction. *Heyward v. Public Housing Administration*, 238 F.2d 689, 694 (5th Cir. 1956). Wright & Miller, 10 Federal Practice and Procedure p. 402 (1972). The Court concludes that the federal defendants' motion should be considered a motion to dismiss.

At the hearing on June 25, 1980, the federal defendants also argued that the complaint fails to state a claim under Rule 12(b)(6), at least to the extent of the claims alleging prospective harm and seeking injunctive remedies. The theory is apparently that the mandatory injunctive relief sought by the plaintiffs is barred by the holding in *Prairie Band of the Pottawatomie Tribe of Indians v. Udall*, 355 F.2d 364 (10th Cir. 1966) *cert. denied* 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67, which identified a clear, ministerial duty as one of the traditional prerequisites to an issuance of a writ of mandamus, and the holding in *Davis v. Ball Memorial Hospital Association, Inc.*, No. IP–78–C (S.D.Ind. Dec. 17, 1979) that the extent of the "periodic investigation" required by 42 U.S.C. § 300p–2(c) [300s–6] is a matter of the Secretary's discretion. *Prairie Band v. Udall* simply does not apply here. Assuming *arguendo* that the Court agrees with the holding in *Davis*, that alone is inadequate to support dismissal in the instant case. Discretion may be subject to abuse, and even discretionary actions may violate constitutional rights. The Court cannot conclude that plaintiffs could prove no set of facts that would entitle them to the relief they seek. *Conley v. Gibson, supra* in text.

or constitutional guarantee in question,

(3) whether the injury can fairly be traced to the challenged action of the defendant (rather than resulting from independent third party action), and

(4) whether the injury is likely to be redressed by a favorable decision.

553 F.2d at 205 n. 68. The federal defendants do not question that plaintiffs have suffered injuries in fact which are within the zone of protected interests. Defendants urge, however, that plaintiffs have failed to allege the causal link between the injuries resulting from a denial of uncompensated medical services and the agency, and that the plaintiffs have failed to show that the relief they seek against the agency will redress their injuries.

While the District of Columbia Circuit has summarized these relevant inquiries in admirable fashion in *Harrington v. Bush, supra,* that suit concerned a congressman's action for an injunction and declaratory judgment against the Central Intelligence Agency. A study of the Supreme Court case from which the District of Columbia Court of Appeals derived the four inquiries is more enlightening with respect to their application to the facts in the instant case. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) was a class action under Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, by an unincorporated association of low income persons against the Secretary of the Treasury and the Commissioner of the Internal Revenue Service, challenging a 1969 Revenue Ruling which included, within those hospitals qualifying for exemption as charitable corporations under Internal Revenue Code of 1954 (the Code) § 501(c)(3), a hospital which provided emergency room care to indigents but otherwise limited its admissions to those who could pay the cost of treatment. The complaint alleged specific occasions on which members of the plaintiff class had been refused medical services at a hospital determined to be a tax-exempt charitable corporation by the Secretary and the Commis-

sioner. The theory was that by extending such benefits to these hospitals despite their refusals of medical treatment to indigents, the defendants were encouraging refusal of medical treatment in violation of the Code and the Administrative Procedure Act and contributing to plaintiffs' injuries. Plaintiffs sought various forms of declaratory and injunctive relief including the collection of back taxes.

In a motion to dismiss, the defendants challenged the plaintiffs' standing, among other things. The district court denied the motion, and the District of Columbia Court of Appeals reversed on grounds other than the issue of standing. On review by certiorari, the Supreme Court only reached the jurisdictional issues and concluded that the complaint failed to establish plaintiffs' standing to sue.

The Supreme Court identified the relevant inquiry to be "whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." 426 U.S. at 38, 96 S.Ct. at 1924. This inquiry is not adequately answered by "unadorned speculation." 426 U.S. at 44, 96 S.Ct. at 1927. Thus, the court found that denials of hospital service could not fairly be traced to the alleged encouragement of the Secretary's and Commissioner's regulatory action. Moreover, the court was unconvinced that the requested remedial action, making treatment of indigent persons a prerequisite to charitable corporation status, would result in the availability of such services to the plaintiffs. "[I]t is just as plausible that the hospitals to which respondents [plaintiffs] may apply for service would elect to forego favorable tax treatment to avoid the undetermined financial drain of an increase in the level of uncompensated services." 426 U.S. at 43, 96 S.Ct. at 1926.

The federal defendants in the instant case cannot claim the same indirect relationship to a hospital's alleged denials of uncompensated medical service that the Supreme Court found in *Simon v. Eastern Kentucky Welfare Rights Organization.* The alleged failure of the federal defend-

ants to adequately discharge their duties under the Hill-Burton Act (see complaint paragraph 60) is causally related to plaintiffs' injuries, keeping in mind that qualified indigent persons are beneficiaries of the provisions at issue in the instant case. *Newsom v. Vanderbilt University*, 453 F.Supp. 401 (M.D.Tenn.1978). As the Court understands it, the claim is that inadequate investigation and enforcement allowed (not merely encouraged) the alleged denials to occur. The claim is buttressed by the fact that new agency regulations were not published until some four years after the enactment of Title XVI to the Public Health Service Act. Nor can the federal defendants successfully claim that the State defendants intervened to break the causal connection between the federal agency and the plaintiffs' injury based upon the duties delegated to the state agency pursuant to 42 C.F.R. § 53.111. The State defendants cannot be deemed independent third parties in light of the federal supervisory responsibility over their actions.

Unlike the remedy sought in *Simon v. Eastern Kentucky Welfare Rights Organization*, the remedies sought in the instant case, if they are granted, go directly to the matter of compliance and leave little room for speculation. Changes in the implementation of investigatory and enforcement duties would not leave the defendant Hospital with an uninhibited choice whether to comply with the applicable law. The provision of medical services pursuant to the Hill-Burton Act assurances would be directly affected by granting the requested remedy. Accordingly, the Court finds the federal defendants' standing argument to be without merit.

▉ The remedies which plaintiffs seek against the federal defendants include:

(1) a declaratory judgment that the federal defendants have violated the Hill-Burton Act and plaintiffs' constitutional rights,

(2) an injunction prohibiting future violation, and

(3) a mandatory injunction requiring the federal defendants to submit a plan detailing the manner in which they will carry out future investigation and enforcement of compliance.

The federal defendants assert that the plaintiffs' claims are moot because the new HEW regulations provide substantially everything that the plaintiffs seek. Therefore, defendants argue on the basis of *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) and *Hall v. Beals*, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) that subsequent actions of the federal defendants have removed this lawsuit from the realm of actual cases or controversies. *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

The Court does not agree. This is not a simple challenge to the constitutionality of HEW regulations issued pursuant to the Hill-Burton Act. It if were, then certainly the decision in *Hall v. Beals, supra* would be applicable. In that case the Colorado statute requiring six-month residency prior to voting was the focus of the lawsuit. The amendment of that statute erased the effect of the statute on the plaintiffs' interests, past and present, so that all that remained was plaintiffs' opposition to residency requirements in general. 396 U.S. at 48, 90 S.Ct. at 201. The complaint in the instant case alleges a failure to carry out duties imposed by the Hill-Burton Act, as amended, during the period 1975–1979. The National Health Planning and Resources Development Act of 1974, 42 U.S.C. § 300k *et seq.*, which replaced the original Hill-Burton Act in 1975, differs significantly from the original Act, as previously noted in the legislative history. The requirements which it imposes have not changed since its enactment.

The federal defendants argue, however, that in light of the new regulations issued in 1979, the plaintiffs cannot demonstrate a "reasonable expectation that the wrong will be repeated" and, thus, cannot save their case from mootness according to the Supreme Court in *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897–898, 97 L.Ed. 1303 (1953). That case, however, placed the burden on the defendant, not the plaintiff:

Both sides agree to the abstract proposition that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot.

\* \* \* \* \* \*

The case may nevertheless be moot if the defendant can demonstrate that "there is no reasonable expectation that the wrong will be repeated."

*Id.*, quoting *United States v. Aluminum Company of America*, 148 F.2d 416, 448 (2d Cir. 1945). Moreover, the Fifth Circuit has held in a case involving a federal agency that "in order for voluntary cessation of allegedly illegal conduct to render a case moot, there must be no reasonable expectation that the alleged violation will recur and intervening events must have completely eradicated the effects of the conduct." *City of Waco v. Environmental Protection Agency*, 620 F.2d 84 at 87 (5th Cir. 1980) citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). While the new regulations are the most extensive regulations issued to date implementing the Hill-Burton Act, the Court cannot conclude that their issuance removes every reasonable expectation that the agency's actions could be deficient with respect to investigation and enforcement in the future. Further, the Court cannot conclude that the defendants' actions have completely eradicated the alleged effects of the past conduct of the federal defendants. The Court concludes, therefore, that plaintiffs' claims are not moot.

In summary, the Court will deny all three motions filed by the defendants in this action and lift the stay of discovery entered by order of this Court on June 4, 1980. The plaintiffs will be required to amend the complaint to allege compliance with the requirements of Section 1612 of the Public Health Service Act, as amended, 42 U.S.C. § 300p–2(c) [1627, 42 U.S.C. § 300s–6].