The **PEOPLE** of the State of Colorado, in the Interest of D.C. and J.C., Children, upon the Petition of K.T. a/k/a K.C., Petitioner–Appellee,

**and Concerning**

**Denver Department of Social Services, Respondent–Appellant.**

**No. 89CA1473.**

Colorado Court of Appeals, Div. IV.

Aug. 9, 1990.

Legal Aid Soc. of Metropolitan Denver, Linda Sue Anderson, Denver, for petitioner-appellee.

Stephen H. Kaplan, City Atty., J. Creig Coogan, Asst. City Atty., Denver, for respondent-appellant.

Opinion by Judge DAVIDSON.

The Denver Department of Social Services (Department) appeals from a judgment of the juvenile court directing the Department to pay petitioner two sums of money, for a total of $2,150, plus interest at a rate of 12 percent per annum. The first sum, $1,450, consists of support payments paid by the father to the registry of the juvenile court. The second sum, $700, was collected separately by the Department through a wage assignment. We affirm in part and reverse in part.

The case arises from a child support proceeding filed in the juvenile court in 1972 by petitioner and her two minor children, utilizing the services of the Department. At the conclusion of that proceeding, the juvenile court entered a support order di-

recting the father to pay child support in the sum of $50 per child per month ($100/month) into the registry of the juvenile court.

From June 1972 until February 1978, petitioner received Aid to Families with Dependent Children (AFDC). Pursuant to statutes and regulations then in effect, she assigned her rights to child support for this period to the Department. Although the Department received all payments made by the father during this time, a number of payments were not made.

In February 1978, after petitioner was no longer eligible for AFDC assistance, the Department filed a motion requesting that the juvenile court issue a pay over order directing the registry to pay all future support payments to petitioner. Accordingly, in the order in dispute here, the juvenile court directed that all subsequent payments be forwarded by the court registry to petitioner rather than to the Department. Despite this order, payments made by the father from October 1978 until January 1980 to the registry of the court continued to be sent to the Department. These payments amounted to $1,450, of which petitioner received nothing.

In January 1985, in a separate proceeding brought by the Department to collect arrearages for support owed to the Department between January 1970 and February 1978 while petitioner was on AFDC, the juvenile court entered an "Order for Assignment of Wages and Payroll Deduction" directing the father's employer to withhold $50 per month for "court ordered support or maintenance." The Department collected $700 pursuant to this wage assignment, and again, petitioner received none of this money.

In May 1987, petitioner filed a motion for an accounting of funds, challenging payments by the registry of the court to the Department. She requested an order from the juvenile court directing the Department to pay over money to which she was entitled.

In January 1989, the juvenile court commissioner directed the Department to pay petitioner the $1,450 of support payments paid into the court registry pursuant to the 1978 order, and the $700 collected by the Department through the wage assignment, plus interest at a rate of 12 percent per annum. That order and the commissioner's findings were upheld by the trial court, and the Department appealed.

## I.

The Department first contends that the juvenile court lacked subject matter jurisdiction to enter the order below. We disagree.

Section 13-8-102, C.R.S. (1987 Repl.Vol. 6A) vests the juvenile court with legal and equitable powers to effectuate its jurisdiction and carry out its orders, judgments, and decrees.

Here, pursuant to a motion by the Department, the juvenile court in 1978 ordered that all future support payments received by the Department be paid over to petitioner. That order was never appealed and is therefore controlling. We conclude that the enforcement of the 1978 order, which entered a money judgment against the Department for payments it received that should have gone to the petitioner, is within the juvenile court's jurisdiction. *See City & County of Denver v. Brockhurst Boys Ranch, Inc.*, 195 Colo. 22, 575 P.2d 843 (1978); § 14-14-101, et seq. C.R.S. (1987 Repl.Vol. 6B). See also Colorado Administrative Procedure Act for the Establishment and Enforcement of Child Support, § 26-13.5-101, et seq., C.R.S. (1989 Repl.Vol. 11B) (effective April 1, 1990).

## II.

The Department next contends that petitioner does not have a private right of action in this case. The Department argues that petitioner has utilized Title IV-D of the Social Security Act to obtain a private judgment against the Department for money that she believes the Department should have paid to her. We disagree.

In 1975, the Social Security Act, 42 U.S.C. §§ 651, et seq. (1982) and Supp. III (1985), was amended to add Title IV-D which required that states operating relief

programs providing aid to families with dependent children would be required to establish separate child support enforcement units to provide child support to both AFDC and non-AFDC families and to assist in collection of child support. The AFDC program provides joint federal and state welfare relief to indigent families deprived of support from one parent because of that parent's absence, death, or incapacity. *See Wehunt v. Ledbetter*, 875 F.2d 1558 (11th Cir.1989).

In the City and County of Denver, the Department has been designated as the child support enforcement agency. In that capacity, the Department assisted petitioner on behalf of her two eligible children from June 1972 until February 1978 while she was in the AFDC program.

In support of its claim that petitioner has no private right of action, the Department relies on the case of *Wehunt v. Ledbetter, supra.* That case involved a suit by AFDC recipients against a Title IV–D agency claiming damages for the agency's failure to establish paternity and obtain a support order on the recipient's behalf in violation of the agency's duty under Title IV–D. The court in *Wehunt* found that Title IV–D did not create a private right of action for AFDC recipients.

Here, however, petitioner is not claiming that the Department failed to fulfill an obligation created by Title IV–D. Rather, petitioner has moved for an accounting based upon an assertion that the Department has withheld money that should have been paid to her. Unlike the circumstances in *Wehunt*, this claim is based upon the Department's failure to comply with a court order and petitioner's request that the court enforce its order. Thus, the Department's contention does not have merit.

### III.

■ We also disagree with the Department's contention that its receipt of the $1,450 sent to it by the court registry should be treated as a collection of arrearages, rather than as improperly received current support payments.

The Department relies upon 45 C.F.R. 302.51(f) (1977) which provides that, once a family ceases receiving assistance under a state's IV–A plan, the assignment of support rights terminates except with respect to any unpaid support obligation that has accrued under such assignment. The regulation further provides that the state agency "shall attempt to collect such unpaid obligation," and that "[o]nly amounts collected ... which exceed the amount of un-reimbursed past assistance shall be paid to the family."

While the above regulation undoubtedly would apply in the case of a proper collection by the Department, the fact remains that, by virtue of the 1978 court order directing that payments be sent to the mother, the Department was not supposed to receive the $1,450 in the first place. 45 C.F.R. 302.51 does not address what a Title IV–D agency should or should not do with money it receives in error. We conclude that improper receipt of money by the Department does not constitute a "collection" within the meaning of 45 C.F.R. 302.51. That regulation, therefore, has no application to this dispute.

### IV.

■ The Department next contends that the trial court erred in treating the Department's receipt of $700 under a court authorized wage assignment as a collection of current support. We agree.

Section 14–14–107(5)(c)(VI), C.R.S. (1987 Repl.Vol. 6B) directs that a wage assignment contain information stating the amount of wages to be withheld each month for current support and the amount to be withheld for arrears.

In his factual findings, the commissioner concluded that the wage assignment was "ambiguous" since it provided for collections of only $50 per month, only half the amount of support owed each month, and made no provisions as to current support. We disagree with the findings of the commissioner regarding the ambiguity of the wage assignment order.

Questions relating to the ambiguity of a document are questions of law, and appel-

late courts are not bound by the findings of the trier of fact. *Bauer Development Co. v. Nu–West, Inc.,* 757 P.2d 1149 (Colo.App. 1988). Words used in a document are to be given their plain and generally accepted meaning by the court construing the document. *Bevsek v. Huerfano School District RE–1,* 728 P.2d 325 (Colo.App.1986).

Here, the 1984 wage assignment states that monies derived therefrom should go "[t]owards arrearages of $5,506.62 owed to the Denver Department of Social Services."

We conclude that the assignment clearly and unambiguously directs the money to go to the Department to satisfy arrearages. Additionally, we note that petitioner was free to file her own wage assignment for current support. Had she done so, that assignment would have taken precedence over the Department's wage assignment pursuant to § 14–14–107(11)(b)(I), C.R.S. (1987 Repl.Vol. 6B). Petitioner, however, did not seek such a wage assignment, and we see no justification in penalizing the Department because of petitioner's inaction.

■ We also reject petitioner's contention that her due process rights were violated when the Department failed to notify her prior to collecting arrearages under the wage assignment.

Although due process is required before the state may permanently deprive a person of a property interest, *see New Safari Lounge, Inc. v. City of Colorado Springs,* 193 Colo. 428, 567 P.2d 372 (1977), here, the Department's actions in seeking to collect arrearages did not deprive petitioner of her right to receive current support nor did they substantially impair her ability to collect such support. Indeed, as previously noted, petitioner was free to seek her own wage assignment which would have taken priority over that of the Department.

Moreover, federal regulations do not require the Department to notify former AFDC recipients no longer receiving Title IV–D services of its actions to collect arrearages, even though such collections may be made to reimburse past assistance paid to such recipients. *Hill v. Ibarra,* (D.Colo. 1990) (Civil action No. 89–F–1070, June 19, 1990).

We conclude that the actions of the Department in collecting the $700 assigned arrearages did not amount to a violation of petitioner's due process rights under the Fourteenth Amendment.

## V.

■ Finally, we also agree with the Department's contention that the trial court erred in assessing interest on the judgment at a rate of 12 percent per annum.

The trial court relied upon § 14–14–106, C.R.S. (1989 Cum.Supp.) which provides as follows: "Interest per annum at four percent greater than the statutory rate ... on any arrearages and child support debt due and owing may be collected by the judgment creditor...."

We interpret this provision to be applicable only as to support past due and unpaid by an *obligor,* which is defined as any person owing a duty of support, or against whom a proceeding for the establishment or enforcement of a duty of support is commenced. *See* § 14–14–102, C.R.S. (1987 Repl.Vol. 6B).

In addition, we disagree with petitioner's assertion that money improperly sent to and received by the Department qualifies as "arrearages and child support due and owing" within the meaning of § 14–14–106.

Accordingly, we conclude that the trial court erred in assessing interest on the judgment at a rate of 12 percent rather than at the statutory rate of 8 percent pursuant to § 5–12–102(4)(b), C.R.S. (1989 Cum.Supp.).

The judgment is affirmed as to the award of $1,450 to petitioner; it is reversed as to the award of $700 to petitioner and as to the assessment of 12 percent interest; and the cause is remanded to the trial court for modification of the judgment consistent with the terms of this opinion.

METZGER and PLANK, JJ., concur.