Evelyn HILL, Plaintiff–Appellant,

v.

Irene IBARRA, in her official capacity; the Denver Department of Social Services; Mary Krane, in her official capacity, Defendants–Appellees.

No. 90–1207.

United States Court of Appeals, Tenth Circuit.

Jan. 28, 1992.

Stephen F. Dunham of Morrison & Foerster, Denver, Colo. (Charles F. Kaiser, Janet C. Perriman and Kimberly E. Ghiselli, with him on the briefs), for plaintiff-appellant.

Wm. John Crichton, III, Asst. Atty. Gen., Human Resources Section, Denver, Colo. (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen. and Richard H. Forman, Sol. Gen., with him on the brief), for Irene Ibarra.

Niels Loechell, Asst. City Atty., Human Services Div., Denver, Colo. (Patricia L. Wells, Denver City Atty., with him on the briefs), for The Denver Dept. of Social Services and Mary Krane.

Before HOLLOWAY, ANDERSON and TACHA, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Evelyn Hill appeals from a summary judgment entered by the district court dismissing her civil rights action under 42 U.S.C. § 1983 against the Denver Department of Social Services ("DDSS"), its manager, Mary Krane, and the Executive Director of the Colorado Department of Social Services, Irene Ibarra (collectively referred to hereinafter as "defendants"). Ms. Hill is a former recipient of Aid to Families with Dependent Children ("AFDC"). When she ceased receiving aid the DDSS, as permitted by law, obtained a judgment against the father of Hill's children for child support arrears, in partial reimbursement of aid paid to Ms. Hill. The central issue is whether DDSS was required to pay over to Ms. Hill the money collected on the judgment on the theory that all monies collected by DDSS from the father represent unpaid current child support first, and that applicable federal law gave Ms. Hill a priority interest in such amounts. Due process claims are also presented.

We hold that Ms. Hill has no interest in amounts collected by DDSS on its judgment for child support arrears because she did not authorize DDSS to collect current child support payments as required by the

applicable statute and regulations. Similarly, we conclude there was no violation of Ms. Hill's due process rights, and no taking in violation of the Fifth Amendment. Accordingly, we affirm the judgment of the district court.

## I. BACKGROUND

AFDC is a federal/state welfare program contained in the Social Security Act, 42 U.S.C. §§ 601–628 (1983). The Department of Health and Human Services ("HHS") oversees the program and withholds or reduces federal funds if a state fails to comply with federal requirements. In 1975, Congress amended the Social Security Act by adding Title IV–D to create a child support enforcement program "to enforce support obligations owed by absent parents, establish paternity, and [to obtain] child and spousal support." 42 U.S.C. § 651.

Evelyn Hill received AFDC benefits from DDSS from 1966 until approximately May, 1981. On March 9, 1977, Ms. Hill assigned her rights to receive child support to DDSS, in accordance with the terms specified in Title IV–D. The assignment provided that it was effective as to all of Ms. Hill's past, present and future support rights against Robert Hill, and that any recovery of child support by DDSS under the assignment would be made and distributed in compliance with the Social Security Act, applicable federal regulations, and the rules of the Colorado Department of Social Services. *The assignment further provided that it would terminate with respect to current support rights upon the termination of Ms. Hill's eligibility for public assistance,* and with respect to support rights attributable to the period during which Ms. Hill received public assistance, upon the repayment of such assistance.

In January of 1978, DDSS, on behalf of and in the name of Ms. Hill, obtained a child support award from the Denver Juvenile Court ordering Robert Hill to pay monthly child support payments in the amount of $150.00 increasing to $225.00 by April 1, 1979, for the benefit of Ms. Hill's three children. DDSS notified Ms. Hill of its efforts to obtain child support payments on behalf of her children and of the order.

As a condition to receiving AFDC, Ms. Hill was required to and did cooperate with DDSS in establishing the support order. Because Ms. Hill was receiving AFDC at the time the support order was entered, the order reflected a pay-over from the court registry to DDSS.

Ms. Hill went off the welfare roll sometime in 1981. On November 23, 1981, DDSS obtained a judgment in the amount of $8,137.50, plus interest, against Robert Hill, for child support arrearages owed to DDSS. Thereafter, DDSS proceeded to collect on its judgment by garnishment and wage assignment, enforced by court order. From December 23, 1981 to May 6, 1989, DDSS collected $5,350.78 from Robert Hill in partial satisfaction of its judgment against him. None of this amount was paid to Ms. Hill for current child support, and she was not notified of the collection proceedings or the amounts collected.

In 1985, DDSS sent Ms. Hill a letter informing her that she could apply for the services of DDSS to help establish and/or collect current support for her one child who was still a minor. The letter provided:

> Please be advised that you may apply for the services of the Denver Department of Social Services to help you establish and/or collect support for your Minor Child(ren).

> Please contact the department to inquire about our services and fees....

Plaintiff's Summary Judgment Motion, Ex. J, Addendum to Appellant's Brief, Tab A–8. The letter did not mention DDSS' pending wage assignment for arrearages or Ms. Hill's right to have priority given to the collection and distribution of current support should she choose to have DDSS collect such support on her behalf.

Following cessation of her AFDC benefits in 1981, Ms. Hill had the sole right under state and federal law to enforce against Robert Hill his obligation under state law to pay current child support to her. However, Ms. Hill made no effort to enforce that right.

In her suit, Ms. Hill seeks compensatory, injunctive and declaratory relief, contending that defendants violated her rights under federal law. She also claims she was denied her constitutional right of due process, and that the state deprived her of property without just compensation, in violation of the Fifth and Fourteenth Amendments.

The district court held that defendants' actions did not rise to a violation of due process under the Fourteenth Amendment and did not constitute a taking of property without just compensation under the Fifth and Fourteenth Amendments. The district court also held that Title IV–D creates no rights privately enforceable through § 1983 and that, accordingly, Ms. Hill lacked standing to bring a civil rights action based on alleged violations of the statute. We affirm on somewhat different grounds.

## II. DISCUSSION

■■■ To state a valid cause of action under § 1983, a plaintiff must allege the deprivation by defendant of a right, privilege, or immunity secured by the constitution and laws of the United States while the defendant was acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir.1988); *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir.1989). Section 1983 has been construed to provide a cause of action not only for violations of the Constitution, but also for violations of federal statutes. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980); *Pushkin v. Regents of Univ. of Colo.*, 658 F.2d 1372, 1380 (10th Cir.1981); *Holmes v. Finney*, 631 F.2d 150, 154 (10th Cir.1980). However, there is no cause of action under § 1983 where the underlying statute does not create an enforceable right. *Spielman v. Hildebrand*, 873 F.2d

1377, 1386 (10th Cir.1989) ("Section 1983 does not provide a remedy if federal law does not create enforceable rights."); *see Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981); *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). Ms. Hill claims that defendants deprived her of rights secured by federal laws, by the Due Process Clause of the Fourteenth Amendment, and by the Takings Clause of the Fifth Amendment applied to the states through the Fourteenth Amendment.

### A. FEDERAL LAW CLAIMS

Ms. Hill asserts that federal law entitles her to the "right to have priority given to the collection and distribution of current support." Appellant's Brief at 8, 29. She alleges that "both federal and state law require DDSS to distribute *any* monies collected first to the family to satisfy current support," *id.* at 26 (emphasis added), and that "the express language of both the statute and the implementing regulation requires that priority be given to a current support *whenever* collections are made by the state." *Id.* at 28 (emphasis added). Finally, Ms. Hill claims that Colorado Law requires that social services give priority to the collection and distribution of current support, citing Colo.Rev.Stat. § 14–14–104 (1987) and its implementing regulation, 9 Colo.Code Regs. § 2504–1, 6.902.2 (eff. June 1, 1983). Appellant's Brief at 28–29.

■■■ The problem with Ms. Hill's argument is that the governing statute and regulations do not empower the state to collect current child support payments for non–AFDC participants unless specifically so authorized by the individual, and, obviously, the state is not obligated to distribute funds it cannot and does not collect. In other words, even if we were to recognize, in general terms, the existence of privately enforceable rights under Title IV–D,[1] as a

---

1. In light of our alternative disposition of plaintiff's claims, *see Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir.1988) (court of appeals is free to affirm district court on any ground for which record permits conclusion of law), we need not and do not express an opinion on the unsettled issue whether Title IV–D creates substantive personal rights remediable through § 1983. *See generally Southeastern Community College v. Davis*, 442 U.S. 397, 405 n. 5, 99 S.Ct.

matter of law and common sense the "right" urged here by Ms. Hill to a prioritized distribution of current child support payments would necessarily be *conditioned* on the prior collection of such funds by the state pursuant to her mandatory authorization. The statute, 42 U.S.C. § 657(c) (1983), provides:

(c) Collection after termination of assistance; distribution of support proceeds

Whenever a family for whom support payments have been collected and distributed under the plan ceases to receive assistance under part A of this subchapter, the State *may* —

(1) continue to collect amounts of support payments which represent monthly support payments from the absent parent for a period of not to exceed three months from the month following the month in which such family ceased to receive assistance under part A of this subchapter, and pay all amounts so collected, which represent monthly support payments, to the family; and

(2) at the end of such three-month period, *if the State is authorized to do so by the individual on whose behalf the collection will be made*, continue to collect amounts of support payments which represent monthly support payments from the absent parent and pay the net amount of any amount so collected, which represents monthly support payments, to the family after deducting any costs incurred in making the collection from the amount of any recovery made,

and so much of any amounts of support *so collected* as are in excess of the payments required to be made in paragraph (1) shall be distributed in the manner

provided by subsection (b)(3)(A) and (B) of this section which respect to excess amounts described in subsection (b) of this section.[2]

(emphasis added).

The implementing regulations that were in effect as of October 1, 1981 (when Ms. Hill ceased receiving AFDC) provide, as follows:

(e) Whenever a family for whom child support payments have been collected and distributed under the title IV–D State plan ceases to receive assistance under the title IV–A State plan, the IV–D agency may;

(1) Continue to collect current support payments from the absent parent for a period not to exceed three months from the month following the month in which the family ceased to receive assistance under the title IV–A State plan, and pay all amounts so collected to the family and;

(2) At the end of such three month period, *if the IV–D agency is authorized to do so by the individual on whose behalf the collection will be made*, continue to collect such support payments from the absent parent and pay the net amount of any amount so collected to the family after deducting any costs incurred in making the collection from the amount of any recovery made.

45 C.F.R. § 302.51 (1981) (emphasis added).

Ms. Hill concedes that she did not authorize the state agency to collect current child support payments during the relevant periods of time when she was not receiving public assistance. It is therefore uncontroverted that Ms. Hill did not fulfill a condition necessary to her asserted right to have

---

2361, 2366 n. 5, 60 L.Ed.2d 980 (1979) (Court need not resolve issue whether Rehabilitation Act of 1973 affords private right of action either by implication or through remedial mechanism of § 1983 where plaintiff unable to establish underlying statutory violation in any event); *Spielman,* 873 F.2d at 1386 (court need not decide whether cause of action is available under § 1983 for enforcement of Adoption Assistance and Child Welfare Act of 1980 where no specific provision at issue in case created potentially actionable rights).

**2.** Subsection (b)(3)(A) and (B) provide that any amounts collected by the state as support that are in excess of amounts required to be distributed to the family on AFDC as monthly support shall be retained by the state to reimburse it for assistance payments made. If the amounts are above what is required to reimburse the state for the monthly assistance, such amounts shall be paid to the family.

DDSS collect and give priority to distribution of current child support payments.

 It would seem virtually tautological that when a statute imposes conditions or qualifications on any right or benefit granted therein, such prerequisites must be satisfied before any enforceable statutory entitlement can be said to exist. *See, e.g., Evans v. Dist. No. 17,* 841 F.2d 824, 828–29 (8th Cir.1988) (procedural rights conferred by Education for the Handicapped Act inapplicable where requisite change-of-placement request for child not made); *Copeland v. Philadelphia Police Dept.,* 840 F.2d 1139, 1148–49 (3d Cir.1988) (claim under Rehabilitation Act of 1973 rejected because plaintiff failed to satisfy statutory condition that he be "otherwise qualified" for position lost due to handicap), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989); *Lynch v. Maher,* 507 F.Supp. 1268, 1272 (D.Conn.1981) (entitlement to notice and hearing under medicaid statute not triggered where prerequisite request for authorization of desired services never made); *see also Sampson v. Civiletti,* 632 F.2d 860, 862–63 (10th Cir.1980) (failure to exhaust administrative remedies as required by 42 U.S.C. § 2000e–16 precludes enforcement of rights created under Title VII). Equally self-evident is the proposition that a § 1983 claim premised upon rights created in another federal statute cannot survive the failure to establish a violation of the latter. *See Burke County Bd. of Educ. v. Denton,* 895 F.2d 973, 984 (4th Cir.1990); *Pinkerton v. Moye,* 509 F.Supp. 107, 114 (W.D.Va.1981); *see also Southeastern Community College v. Davis,* 442 U.S. 397, 404 n. 5, 414, 99 S.Ct. 2361, 2366 n. 5, 2371, 60 L.Ed.2d 980 (consideration of availability of § 1983 remedy obviated by failure to establish underlying statutory violation); *Spielman,* 873 F.2d at 1386 (same). In short, since whatever privately enforceable right, if any, created by the underlying federal statute relied upon by Ms. Hill is conditional, "there can be no right of action under § 1983 unless [she demonstrates] compliance with the statutory preconditions." *Barlow v. Marion County Hosp. Dist.,* 495 F.Supp. 682, 692 (M.D.Fla.1980). Accordingly, unless and until Ms. Hill requests and authorizes DDSS to collect current support payments on her behalf, she has no statutory entitlement enforceable under § 1983 to have priority given to collection and distribution of current support payments.

None of Ms. Hill's authorities support a contrary conclusion. She cites 42 U.S.C. § 654(11) and 42 U.S.C. § 657(c)(2) (1983). She also cites the regulations implementing those statutes as follows:

> For the purposes of distribution [of child support collections] under this section, amounts collected shall be treated first as payment on the required support obligation for the month in which the support was collected and if any amounts are collected which are in excess of such amount, these excess amounts shall be treated as amounts which represent payment on the required support obligation for previous months.

45 C.F.R. § 302.51(a) (1981).

The cited provisions that require priority to be given to collection of current monthly child support payments, 42 U.S.C. § 654(11) (1983) and 45 C.F.R. § 302.51(a) (1981), apply to situations where the state is collecting such support on behalf of a welfare recipient, not where it is simply collecting on its own judgment for arrearages. And, as indicated above, 42 U.S.C. § 657(c)(2) applies to situations where a former AFDC recipient has *authorized* a state Title IV–D agency to continue to collect current child support. The Colorado statute Ms. Hill cites as supporting her argument, Colo. Rev.Stat. 14–14–104 (1987), does not deal with priority of distribution of child support but with the creation of a child support debt in favor of county departments of social services to reimburse them for public assistance outlays. Finally, the Colorado regulation cited by Ms. Hill, 9 Colo.Code Regs. § 2504–1, 6.902.21 (1983), specifies the order of priority of *enforcement* activities, but does not discuss priority of distribution of monies collected by DDSS.

Ms. Hill states in her brief that she "assumed" any action on her part to collect current child support would be fruitless.

Appellant's Brief at 37. Such an assumption cannot be the basis of a legal right. As she acknowledges, the assignment which she gave to DDSS in 1977 specifically provided that it would terminate as to current child support payments when she ceased receiving benefits under the AFDC program. She is charged with notice of the written terms of that assignment. More importantly, her assumption is plainly contrary to applicable Colorado law, under which she was free to return to the Denver Juvenile Court and obtain her own wage assignment for current child support, which would have taken precedence over DDSS' assignment for arrearages pursuant to Colo.Rev.Stat. § 14–14–107(11)(b)(I), (III) (1987). *See People in Interest of D.C.*, 797 P.2d 840, 844 (Colo.Ct.App.1990).

Ms. Hill also claims that defendants violated federal law by not providing an accounting of the amounts collected by DDSS as required by 42 U.S.C. § 654(5) (1983 & Supp.1991) and 45 C.F.R. § 302.54 (1990). In the 1984 amendments to the Social Security Act, Congress added the requirement that:

> in any case where support payments are collected for an individual with respect to whom an assignment under section 602(a)(26) of this title is effective ... the individual will be notified at least annually of the amount of the support payments collected....

42 U.S.C. § 654(5)(A) (1983 & Supp.1991).

The regulation implementing this portion of the Act states:

> Effective October 1, 1985, the state plan shall provide that the IV–D agency, at least annually, must send a notice of the amount of support payments collected during the past year to individuals who have assigned rights to support under § 232.11 of the title.

45 C.F.R. § 302.54(a) (1990).

 Ms. Hill maintains that because her (now-terminated) assignment of rights to DDSS remains enforceable with respect to unpaid support arising during the period she received public assistance, the cited statute and regulation require that she receive an accounting of the amounts DDSS collected from Robert Hill at least from 1985 on. However, because the statute and regulation are unclear as to whether a former AFDC recipient is entitled to such an accounting, HHS circulated a memorandum to clarify the agency's policy regarding the notice of collection of assigned support. HHS concluded in its memorandum that former AFDC recipients no longer receiving Title IV–D services need receive the annual notice. HHS Memorandum, Defendant Ibarra's Response to Plaintiff's Motion for Summary Judgment, Ex. A, Addendum to Appellees' Brief, Tab K. Where, as here, the law entrusted to agency administration is ambiguous, we must accept the agency's position so long as it reflects a "permissible construction" of the language in question. *Colorado ex rel. Colorado State Banking Bd. v. Resolution Trust Corp.*, 926 F.2d 931, 936 (10th Cir.1991) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted)). Under this deferential standard, we adopt the construction expressed in the HHS memorandum [3] and, consequently, hold that DDSS was not required to provide Ms. Hill with an annual accounting of its efforts to enforce its own judgment for arrearages against Robert Hill.

## B. DUE PROCESS CLAIMS

Ms. Hill claims that she was denied due process under the Fourteenth Amendment because defendants did not give her notice of her right to have DDSS collect child support on her behalf and to have priority given to distribution of current support. She also claims that her due process rights were violated because she was not given notice and a hearing before being deprived of support payments.

---

**3.** Since the statute limits the annual accounting requirement to cases in which child support payments are *collected for an individual*," we think it may fairly be read to apply the requirement only to the authorized collection of current support.

The Fourteenth Amendment protects against deprivations of life, liberty or property without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981) *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Thus, the prerequisites of a valid due process claim are: action by defendants under color of state law; an alleged loss that amounts to a deprivation; the deprivation is of life, liberty or property; and the deprivation is without due process of law. *Parratt v. Taylor*, 451 U.S. at 536–537, 101 S.Ct. at 1913–1914. Because defendants are state actors, the issue before us is whether Ms. Hill suffered a deprivation of life, liberty or property by defendants without due process of law.

Ms. Hill claims there are two property rights she was deprived of by defendants: 1) the right to priority in any monies defendants collected from Robert Hill, and 2) the right to current child support. As already discussed at some length, Ms. Hill would have had an enforceable priority with respect to the monies collected by defendants *only if* she had authorized DDSS to collect current support on her behalf. Since Ms. Hill admittedly never did so, she had no property rights in the money that DDSS collected to satisfy its judgment against Robert Hill.

On the other hand, Ms. Hill clearly does have a state-created property right to current child support from Robert Hill. And, since 1981, Ms. Hill has had the exclusive authority under state and federal law to enforce that right. However, nothing DDSS has done in enforcing its own rights has precluded or impeded Ms. Hill from collecting the current support payments to which she is entitled. *See People in Interest of D.C.*, 797 P.2d at 844 (because former AFDC recipient remained free to enforce current support obligation of children's father by obtaining wage assignment from juvenile court that would override DDSS' collection efforts, DDSS' "ac-

tions in seeking to collect arrearages did not deprive [her] of her right to receive current support nor did they substantially impair her ability to collect such support"). Since DDSS has not imposed any burden on Ms. Hill's right to collect current support payments, Ms. Hill does not have a valid due process claim against defendants for deprivation of that right.

Ms. Hill cites *Bennett v. White*, 865 F.2d 1395 (3rd Cir.1989), *cert. denied*, 492 U.S. 920, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989), *Vanscoter v. Bowen*, 706 F.Supp. 1432 (W.D.Wash.1988), *aff'd in part, rev'd in part sub nom. Vanscoter v. Sullivan*, 920 F.2d 1441 (9th Cir.1990), and *Beasley v. Harris*, 671 F.Supp. 911 (D.Conn.1987), in support of her position that state collection or retention of protected child support payments under Title IV–D constitutes a deprivation of property triggering the procedural protections of the Fourteenth Amendment. However, these cases are plainly distinguishable from Ms. Hill's case in terms of the very principles discussed above. *Bennett* deals with the retention by the state of monthly support collections in excess of public assistance rendered, retention of current monthly support payments after public assistance has terminated (as opposed to collection on a judgment for arrearages owed the state), and refusal of the state to provide current (as opposed to former) AFDC recipients with periodic accountings of monies collected and public assistance expended. *Bennett*, 865 F.2d at 1399. *Vanscoter* and *Beasley* deal with the pass-through provision added to Title IV–D in 1984, which entitles current AFDC recipients to $50 of each support payment collected by the state. 42 U.S.C. § 657(b)(1). The critical element that distinguishes all of these cases from Ms. Hill's situation is that they involve protected property interests, that is, interests to which the parties were undeniably entitled under Title IV–D. As we have seen, Ms. Hill's asserted right to priority in monies collected by defendants simply never arose because it was conditioned upon an action she never elected to take, i.e., the authorization of DDSS to collect current child sup-

port on her behalf following termination of her AFDC benefits.

■ Ms. Hill also bases her due process claim on the allegation that she was not provided sufficient notice of the child support enforcement program established by Title IV–D. Ms. Hill does not dispute that DDSS sent her a letter in July, 1985 informing her that she could apply for the services of DDSS to help her establish and/or collect support for her children. Plaintiff's Summary Judgment Motion, Ex. J, Addendum to Appellant's Brief, Tab A–8. Rather, Ms. Hill claims that the letter constituted *inadequate* notice because it did not specifically inform her that if she responded to the letter and authorized DDSS to collect child support on her behalf, she would have priority in the distribution of any collections made by DDSS. Ms. Hill cites *Ortiz v. Eichler*, 616 F.Supp. 1046 (D.C.Del.1985), *aff'd*, 794 F.2d 889 (3rd Cir. 1986), for the proposition that the state has the burden of providing adequate notice, "and it cannot shift that burden to the individual by providing inadequate notice and inviting the claimant to call to receive complete notice." *Ortiz*, 616 F.Supp. at 1062. That principle is inapplicable under the circumstances presented by this case. *Ortiz* deals with the adequacy of state-provided notice and hearing before federal entitlements may be reduced or terminated. We are not concerned here with the loss of an existing government entitlement, but simply with the offer of a particular government service to assist certain individuals who may, if they wish, request such help. Thus, in its July, 1985 letter, DDSS was not notifying Ms. Hill of the deprivation of any rights or interests, but merely advising her that she could apply for the assistance of DDSS to help her collect on support obligations that, as we have stressed, could be enforced quite independently of Title IV–D. *See People in Interest of D.C.*, 797 F.2d at 844. While the notice provided to Ms. Hill of this voluntary federal enforcement program may not have been as informative as it could have been regarding the advantages of participation, no interests cognizable under the Due Process Clause were adversely affected.

Ms. Hill has not shown that she has been deprived of any substantive rights. Absent such a deprivation, her Fourteenth Amendment claims against defendants must fail.

## C. FIFTH AMENDMENT CLAIMS

■ Finally, Ms. Hill complains that her property was taken without just compensation, in violation of the Fifth Amendment. This claim requires little comment in light of the analysis we have pursued thus far. Defendants have neither deprived Ms. Hill of her right to collect on Robert Hill's current child support obligations, which she has always remained free to enforce over DDSS' efforts to collect on its arrearage judgment, nor have they deprived Ms. Hill of any property interest based on her right of priority in monies collected by DDSS, which is merely a conditional right that, due to her own (non)election, never developed into a cognizable interest. Because there has been no taking of Ms. Hill's property, her Fifth Amendment claim fails.

## III. CONCLUSION

■ Accordingly, for the reasons stated, we hold that Ms. Hill has stated no cause of action cognizable under § 1983, and that the district court properly granted summary judgment dismissing her complaint. Our disposition makes it unnecessary to address other issues raised by the parties.[4]

AFFIRMED.

---

4. As suggested in footnote 1, *supra*, a grant of summary judgment by the district court may be upheld on any grounds supported by the record.

*Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957); *Wilkerson v. Siegfried Ins. Agency*, 683 F.2d 344, 346 (10th

Cir.1982); *Lyles v. American Hoist & Derrick Co.,* 614 F.2d 691, 194 (10th Cir.1980); *Casto v. Arkansas–Louisiana Gas Co.,* 597 F.2d 1323, 1325 (10th Cir.1979); *Keyes v. School Dist. No. 1, Denver, Colo.,* 521 F.2d 465, 472–473 (10th Cir. 1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 806, 46 L.Ed.2d 657 (1976).