In re the MARRIAGE OF Niomi CESPEDES, a/k/a Nohemi Loya, Appellee,

and

Albert Louis CESPEDES, Appellant.

No. 94CA0711.

Colorado Court of Appeals, Div. III.

April 20, 1995.

Joseph M. Fanganello, P.C., Joseph M. Fanganello, Denver, for appellee.

J.D. Pearson, Denver, for appellant.

Opinion by Judge TAUBMAN.

In this post-dissolution of marriage action, Albert Louis Cespedes (father) appeals the order for increased child support, postsecondary education support, and attorney fees payable to Niomi Cespedes, also known as Nohemi Loya (mother). We affirm.

In 1979, father was ordered to pay $80 per month child support for each of the parties' two children. In 1993, mother moved for increased support for the younger child and postsecondary education support for the older child. The trial court determined that support for the younger child should be $178 per month and that father should continue to

pay $80 per month for the older child's post-secondary education expenses.

### I. Real Party in Interest Concerning Child Support

Father first contends that because mother was not the real party in interest, she could not properly file the motion for increased child support. Specifically, he asserts that because mother was receiving Aid to Families with Dependent Children (AFDC) benefits at the time she made the motion, by operation of law, she had assigned all of her children's rights to receive child support to the Department of Human Services and thus ceased to have any legal interest in increased child support. We are not convinced.

 C.R.C.P. 17 requires that actions be maintained in the name of the real party in interest. Generally, if a claim has been assigned in full, the assignee is the real party in interest with a right to pursue an action thereon. *Edis v. Edis*, 742 P.2d 954 (Colo. App.1987). However, a partial assignor retains part of his or her substantive right and is a real party in interest under C.R.C.P. 17(a). *Jouflas v. Wyatt*, 646 P.2d 946 (Colo. App.1982).

C.R.C.P. 17(a) also provides that a party authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought.

 AFDC is a cooperative federal-state public assistance program in which the federal government provides matching funds to the participating states to provide assistance to needy dependent children and their relative caretakers. *Obert v. Colorado Department of Social Services*, 766 P.2d 1186 (Colo. 1988). In order to qualify for matching funds, the state must have in effect a plan approved by the Department of Health and Human Services and must operate its child support program in conformity with that plan. 42 U.S.C. § 601, et seq. (1988); 45 C.F.R. § 232.2 (1993).

Under federal law, a state AFDC plan must require, as a condition of eligibility for AFDC benefits, that the custodial parent who is entitled to receive court-ordered child support from the other parent assign that right to the state. *See* 42 U.S.C. § 602(a)(26)(A); 45 C.F.R. § 232.11 (1993). Colorado satisfies this requirement by § 26–2–111(3)(g)(I), C.R.S. (1989 Repl.Vol. 11B), which provides that:

> A person by signing an application for Aid to Families with Dependent Children assigns, by operation of law, to the state department, all rights the applicant may have to support from any other person on his own behalf or on behalf of any other family member for whom application is made.

The assignment is effective for both current and accrued support and remains in effect with respect to any unpaid support even after the termination of AFDC benefits. *See* § 26–2–111(3)(g)(I)(A) & (C), C.R.S. (1989 Repl.Vol. 11B); *see also* 9 Code Colo. Reg. § 2503–1, § 3.600.33, § 3.650.61, and § 3.662.56.

Further, 45 C.F.R. § 302.51(f) (1993) provides, in pertinent part:

> When a family ceases receiving assistance under the State Title IV–A (disbursement) plan, *the assignment of support rights . . . terminates*, except with respect to the amount of any unpaid support obligation that has accrued under such assignment. From this accrued amount, the IV–D (child support enforcement) agency shall attempt to collect such unpaid obligation. Under this requirement:
>
> (1) such collections *shall be used to reimburse any amounts of past assistance which have not been reimbursed . . . .*
>
> (3) only amounts collected pursuant to this paragraph *which exceed the amount of unreimbursed past assistance shall be paid to the family.* (emphasis added)

 As additional protection for the state, § 14–14–104(2), C.R.S. (1987 Repl.Vol. 6B) provides that the county department of social services shall be subrogated to the debt created by a judgment or order for payment of child support by an obligor. Further, the county department of social services is also subrogated to the right of the dependent child or children or person having legal or physical custody of such child or children to pursue any child support action to obtain

reimbursement of public assistance expended.

■ We must interpret these statutes harmoniously and in a manner that gives effect to the legislative purpose underlying their enactment in order to achieve a just and reasonable result consistent with that purpose. *Rocky Mountain General v. Simon,* 827 P.2d 629 (Colo.App.1992).

We conclude, for three separate reasons, that mother is a real party in interest and, therefore, is entitled to seek an increase in child support.

■ First, although an AFDC recipient by operation of law ostensibly assigns "all rights" to support to the Department of Human Services, in actuality the assignment is only partial. Under federal law, the AFDC recipient is entitled to receive the first $50 of support collected each month. 42 U.S.C. § 657(b)(1) (1988); 9 Code Colo.Regs. § 2503–1, § 3.662.54. Further, current child support in excess of AFDC benefits is paid by the state to the family, subject to the state's right to collect arrearages to recoup the cost of prior unreimbursed assistance payments. *See In re Marriage of Lathem,* 642 S.W.2d 694 (Mo.App.1982).

Additionally, the assignment is limited in duration; once the family ceases receiving AFDC and the state has been reimbursed for its expenditures to the family, support payments made by the non-custodial parent are payable directly to the custodial parent and the assignment terminates. *See Medsker v. Adult and Family Services Division, Dept. of Human Resources,* 42 Or.App. 769, 601 P.2d 865 (1979); *cf. People in Interest of D.C.,* 797 P.2d 840 (Colo.App.1990) (former AFDC recipient may bring action based upon assertion that department of social services withheld money that should have been paid to her).

Thus, since only part of the mother's right to receive child support has been assigned, mother is a real party in interest. *See Jouflas v. Wyatt, supra.*

Second, we conclude that the subrogation provisions of § 14–14–104(2) are intended to provide the Department of Human Services an alternative means to recoup AFDC bene-

fits. We reach this conclusion through consideration of *Moore v. Moore,* 20 Wash.App. 909, 583 P.2d 1249 (1978).

In *Moore,* the court determined that Washington state's similar subrogation statute created legal title to an action in the subrogor, and held that a custodial parent was a real party in interest. The *Moore* court reasoned that to require the state to bring an action directly in every case in which AFDC benefits had been provided would simply give the state rights it already had under the assignment statute and therefore would render meaningless the subrogation right given to the state. Accordingly, the court held that a custodial parent may sue in his or her own name to recover support obligations, subject to the state's subrogation right. *See also In re Marriage of Lathem, supra* (reaching same result).

■ We agree with this reasoning. We conclude that § 14–14–104(2) similarly allows a custodial parent to seek an increase in child support which includes the amount of public assistance received, provided that any such increase is subject to the state's right to subrogation.

■ Third, we note that § 26–13–121(8), C.R.S. (1994 Cum.Supp.) provides in pertinent part that with respect to modification of child support orders by a child support enforcement agency: "Nothing in this section shall be construed to limit any party's right to seek modification of a child support order pursuant to ... § 14–10–122 ... C.R.S. [ (1987 Repl.Vol. 6B) ]." Thus, we conclude that this statute provides specific statutory authorization for a custodial parent receiving AFDC benefits to seek an increase in child support and makes mother a real party in interest.

Finally, in our view, *Edis v. Edis, supra,* does not require a different result. There, a division of this court concluded that a former AFDC recipient was not entitled to seek interest on arrearages after she had assigned the right to receive such payments to the department of social services. Unlike the circumstances here, the mother in *Edis* sought to recover only interest on child sup-

port arrearages, after she had assigned all her rights to collect such arrearages. Thus, because the claim to arrearages there had been assigned in full, the mother was not the real party in interest. Here, by contrast, the assignment was only partial.

Accordingly, we hold that mother was a real party in interest and had a right to maintain this action, subject to the state's statutory subrogation rights.

## II. Real Party in Interest Concerning Postsecondary Education Support

Father further contends that the parties' eighteen-year-old child, and not mother, was the real party in interest concerning the motion for postsecondary education support. We find no merit in this contention.

■ Section 14–10–115(1.5)(b)(I), C.R.S. (1994 Cum.Supp.) provides, in regard to an order for postsecondary child support, that: "Either parent or the child may move for such an order...." As noted, C.R.C.P. 17(a) provides that a party authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought. Accordingly, we reject father's contention.

■ We do not consider father's argument, first raised in his reply brief, that the child should be an additional party to the motion for her support. *See In re Marriage of Zebedee,* 778 P.2d 694 (Colo.App.1988).

■ Similarly, we do not consider father's contention that, because § 14–10–115(1.5)(b)(I) allows the trial court to impose an obligation for postsecondary education support on parents whose marriage has been dissolved, while no such obligation may be imposed on married parents, it violates their right to equal protection and, therefore, is unconstitutional. This issue is not properly before us because the record reveals that father neither complied with C.R.C.P. 57(j) in the trial court nor with C.A.R. 44(a) on appeal. These rules require that a party who is challenging the constitutionality of a Colorado statute, in which neither the state nor any state agency is a party, give immediate notice in writing of the existence of such question to the attorney general or the su-

preme court, respectively. *See Cuny v. Vail Associates, Inc.,* —— P.2d —— (Colo.App. No. 93CA1869, February 23, 1995).

## III. Adequacy of Postsecondary Education Support Order

■ Father also contends that the trial court erred in failing to make adequate findings of fact and conclusions of law in entering the postsecondary education order. We disagree.

Section 14–10–115(1.5)(b)(I), C.R.S. (1994 Cum.Supp.) provides:

> If the court finds that it is appropriate for the parents to contribute to the costs of a program of postsecondary education expenses, the court shall enter an order requiring both parents to contribute a sum determined to be reasonable for the education expenses of the child, taking into account the resources of each parent and the child.

Here, although the written order might have been more detailed, the court's bench ruling adequately supports the $80 per month award. *Cf. In re Marriage of Pollock,* 881 P.2d 470 (Colo.App.1994). Particularly, the court considered the child's motivation, wishes, and educational circumstances, as well as the parents' wishes and ability to contribute. *See also Van Orman v. Van Orman,* 30 Colo.App. 177, 492 P.2d 81 (1971). We will not reweigh those factors or substitute our judgment for that of the trial court in determining that it was appropriate for the parties to contribute to their child's postsecondary education.

We decline to consider father's proposed criteria for the determination of "appropriate" contributions, as the record does not indicate that his proposal was brought to the trial court's attention. *See In re Marriage of Zebedee, supra.*

## IV. Attorney Fees

Father contends that the trial court erred in awarding mother attorney fees because, by virtue of mother's delay in seeking such an award, it lacked jurisdiction to enter such an

order. Under the circumstances presented here, we perceive no error.

Under C.R.C.P. 59(a) a party may move for post-trial relief within fifteen days of the entry of the final order, or such greater time as the court may allow. However, while the rule does provide that a post-trial motion may be filed within "such greater time as the court may allow," the trial court must indicate upon entry of judgment or its final order, or within fifteen days thereafter, that the time period for filing a C.R.C.P. 59 motion has been extended. *In re Marriage of Fleet*, 701 P.2d 1245 (Colo.App.1985).

Further, the failure to file a motion to amend within the time prescribed by the rule or to obtain an extension of time to file such motion deprives the trial court of jurisdiction and requires the dismissal of the appeal. *National Account Systems, Inc. v. District Court*, 634 P.2d 48 (Colo.1981).

However, C.R.C.P. 60(a) provides that clerical mistakes in judgments, orders, or other parts of the record may be corrected by the court "at any time" on its own initiative or on the motion of any party.

Here, the court entered an oral ruling on March 21, 1994, granting mother's support motions and directing father to pay her $500 in attorney fees. The following day, the trial court entered a written order which omitted reference to that part of its oral order directing payment of attorney fees.

On April 13, 1994, more than fifteen days later, mother filed a motion to amend or correct order, requesting that the trial court correct its earlier written order to reflect the award of attorney fees. The court then entered a supplemental order dated May 5, 1994, granting the motion to correct and ordering the payment of attorney fees.

■ Although the motion to amend or correct was filed more than fifteen days after the March 22, 1994, judgment and would normally be barred, *see Stone v. People*, 895 P.2d 1154 (Colo.App.1995), we conclude that the provisions of C.R.C.P. 60(a) are applicable. Inasmuch as the trial court had previously entered an oral ruling awarding attorney fees to mother, we deem it a clerical mistake that the written judgment entered March 22 omitted any reference to that award of attorney fees. Accordingly, pursuant to the provisions of C.R.C.P. 60(a), the trial court was not limited to the fifteen-day period otherwise required by C.R.C.P. 59(a) to amend and correct its earlier judgment. *See Reasoner v. District Court*, 197 Colo. 516, 594 P.2d 1060 (1979).

For the reasons stated above, we also reject father's contention that the award of attorney fees should be set aside because mother is not the real party in interest and because the post-secondary education statute is unconstitutional.

■ Mother has requested an award of her attorney fees incurred in this appeal. Since the trial court is better situated to consider this issue, we direct it to hear that request on remand. *See* § 14–10–119, C.R.S. (1987 Repl.Vol. 6B); *In re Marriage of Pote*, 847 P.2d 246 (Colo.App.1993).

The order is affirmed in all respects, but the cause is remanded for further proceedings on mother's request for attorney fees.

HUME and JONES, JJ., concur.