24CA1597 Marriage of Barton 04-09-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1597
Weld County District Court No. 21DR30127
Honorable Anita Jain Crowther, Judge

In re the Marriage of

Denise Billings-Barton,

Appellee,

and

Brian Scott Barton,

Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE BERGER*
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

Cox Baker Page & Bailey, LLC, James S. Bailey, Alexandra Wetzler England, Lone Tree, Colorado, for Appellee

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellant


* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24 51 1105, C.R.S. 2025.

¶ 1    In this dissolution of marriage proceeding between Brian Scott Barton (husband) and Denise Billings-Barton (wife), husband appeals the district court's order correcting a discrepancy between its written permanent orders and an accompanying spreadsheet. We affirm.

## I.    Relevant Facts

¶ 2    In March 2021, wife petitioned to end the parties' seventeen-year marriage. Following a hearing, the district court dissolved the parties' marriage and entered written permanent orders.

¶ 3    The parties owned together ten real estate properties including several farms. Four of the farms — Home Place, Bailey, Davisson, and Ehrlich — had associated water shares. The parties agreed on a joint expert, Alan Axton, to appraise the real properties, including those with water shares. Mr. Axton opined that the parties had sixty-and-a-half total water shares and, rather than allocate those shares to the properties as they were purchased, he recommended reallocation between the four farms to "more evenly distribut[e] the water throughout the holdings."

¶ 4    Mr. Axton's expert report, which was admitted by stipulation, recommended allocation of water shares as follows:

- The Ehrlich farm – thirteen-and-a-half water shares;

- The Home Place farm – sixteen water shares;

- The Bailey farm – sixteen water shares; and

- The Davisson farm – sixteen water shares.

¶ 5     However, this recommendation mistakenly reallocates sixty-one-and-a-half water shares instead of the sixty-and-a-half water shares the parties actually owned.  The parties informed the court of Mr. Axton's mistake in their joint trial management certificate (JTMC) and — at least in one section of the JTMC — they suggested a correction.

¶ 6     In its written permanent orders, the district court allocated the farms with associated water shares as follows:

- The Ehrlich farm with thirteen-and-a-half water shares to wife;

- The Home Place farm with sixteen water shares to husband;

- The Bailey farm with sixteen water shares to husband; and

- The Davisson farm with sixteen water shares to husband.

¶ 7    The parties agree that this order also allocated sixty-one-and-a-half water shares rather than the sixty-and-a-half water shares the parties actually owned.  Adding to the confusion, the court attached a spreadsheet to its permanent orders which allocated the farm properties and associated water shares as follows:

- The Ehrlich farm with sixteen water shares to wife;

- The Home Place farm with sixteen water shares to husband;

- The Bailey farm with sixteen water shares to husband; and

- The Davisson farm with sixteen water shares to husband.

¶ 8    Thus, the court's division of water shares in the spreadsheet does not match its written order.  And the spreadsheet divides sixty-four water shares — three and a half more than the parties owned.

¶ 9    Accordingly, husband moved for clarification of the court's order regarding water shares.  Husband did not state under what rule or legal authority he moved for the clarification.  He requested that the court (1) allocate to him the Bailey and the Davisson farms with sixteen water shares each and the Home Place farm with

3

fifteen-and-a-half water shares and (2) allocate to wife the Ehrlich farm with thirteen water shares.

¶ 10    In the meantime, each party also filed various motions to reconsider numerous provisions of the permanent orders, none of which are at issue in this appeal. However, in its denial of wife's request that the farms and associated water shares be allocated differently than the court provided in its permanent orders, the court told the parties that it "heard no testimony with regard to water shares, and they were only mentioned in the view of Mr. Axton's report." It went on to note that it was "required to divide the marital estate" but that "[t]he division [was] not required to be equal." And it reminded the parties that although it allocated less farmland and fewer resulting water shares to wife, it assigned equipment and an equalization payment to wife to make the division equitable.

¶ 11    The court addressed husband's motion for clarification of the water shares in its Order Regarding Outstanding Issues on August 22, 2023. In it, the court "again note[d] that there was no testimony presented at trial with regard to the water shares, and the [p]arties relied on Mr. Axton's report, as did the [c]ourt." The

4

court acknowledged the discrepancy between its written order and the accompanying spreadsheet and expressed that its intention was to allocate sixteen shares of water to wife as part of the Ehrlich farm, as noted on the spreadsheet. It therefore ordered that wife be allocated sixteen shares of water and husband be allocated forty-four-and-a-half shares of water.

¶ 12 Husband appeals, arguing that the district court erred because its order was "outside the authority of C.R.C.P. 60(a) given the parties' various stipulations, positions post-hearing, and evidence."

## II. Applicable Law and Standard of Review

¶ 13 As a preliminary matter we note that husband did not specify under which rule of civil procedure he sought relief, nor did the district court identify under what authority it corrected the permanent orders. The parties suggest that the court acted under C.R.C.P. 60(a) to correct "[c]lerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission." We agree with this characterization.

¶ 14 The purpose of C.R.C.P. 60(a) is to allow the district court to correct an error in a judgment so that the judgment accurately

5

reflects the court's intent. *Diamond Back Servs., Inc. v. Willowbrook Water & Sanitation Dist.*, 961 P.2d 1134, 1136 (Colo. App. 1997). C.R.C.P. 60(a) "is limited to making the judgment speak the truth as originally intended and the correction does not entail a relitigation of matters which have already been decided." *Id.* at 1137; *see also In re Marriage of Buck*, 60 P.3d 788, 789 (Colo. App. 2002) (C.R.C.P. 60(a) provides a means for the district court to avoid enforcing an honestly mistaken judgment that is not in accord with the expectations and understanding of the court and the parties).

¶ 15    Therefore, a court may use C.R.C.P. 60(a) to correct any internal inconsistencies and conflicts in a judgment. *See In re Marriage of Cespedes*, 895 P.2d 1172, 1177 (Colo. App. 1995) (C.R.C.P. 60(a) used to resolve inconsistency between an oral ruling awarding attorney fees and the written order, which did not); *see also Reasoner v. Dist. Ct.*, 594 P.2d 1060, 1061 (Colo. 1979) (C.R.C.P. 60(a) encompasses a situation where a written decree did not reflect the district court's prior oral findings).

¶ 16    We review a district court's decision to grant post-judgment relief under C.R.C.P. 60(a) for an abuse of discretion. *In re Marriage*

*of McSoud*, 131 P.3d 1208, 1212 (Colo. App. 2006).  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair.  *Id.*

### III.  Discussion

#### A.  The Parties Did Not Stipulate to the Allocation of Water Shares

¶ 17    Husband asserts the court's stated intention of awarding wife sixteen water shares was in error because it is "contrary to the parties' various stipulations, positions post-hearing, and evidence." We disagree.

¶ 18    First, husband repeatedly asserts that the parties stipulated regarding valuation and reallocation of water shares.  He bases this argument on the parties' JTMC, closing arguments, and "evidence." A review of the JTMC, however, reveals that the parties did not agree about how many water shares should be allocated to each individual farm.  Indeed, their own positions are contradictory at times.

¶ 19    The JTMC lists the address of each property owned by the parties, and each section for each farm with water shares included the following sentence: "The value of this property, and the associated water shares, is disputed."  For each property, the JTMC

also lists any outstanding mortgage balance, the number of water shares associated with each property, and the reallocation recommended by Mr. Axton, if applicable. To account for Mr. Axton's miscalculation, the JTMC stated that the Ehrlich farm should be allocated thirteen shares instead of the recommended thirteen-and-a-half and the Davisson farm should be allocated fifteen-and-a-half shares instead of the recommended sixteen shares.

¶ 20    In the body of wife's portion of the JTMC, she asked that she be awarded the Bailey farm, with sixteen water shares and the Ehrlich farm with thirteen water shares and that husband be awarded the Home Place farm with sixteen shares and the Davisson farm with fifteen-and-a-half shares. However, wife submitted a spreadsheet accompanying the JTMC which followed Mr. Axton's reallocation of water shares among the farms, including his miscalculation.

¶ 21    In husband's portion of the JTMC addressing real property, he did not provide a proposed division at all but simply disputed wife's request for how any equalization payment be made to her. Husband also submitted a spreadsheet with the JTMC, which

appears to propose that the water shares be allocated as they were purchased, rather than following the recommended reallocation proposed by Mr. Axton.

¶ 22　　Thus, given the various — and at times contradictory — positions of each party and the repeated notation that the value of the properties and the associated water shares was disputed, we reject husband's contention that the JTMC reflected a "stipulation" regarding water share division that the court was required to follow.

¶ 23　　Husband also asserts that the parties stipulated to allocation of the water shares in their respective closing arguments. We also reject this argument.

¶ 24　　In closing, wife proposed that the parties be allocated farms with water rights in a close-to-equal manner, with husband receiving Home Place and Davisson with a total of thirty-one water shares and wife receiving Bailey and Ehrlich with a total of twenty-nine-and-a-half water shares. Husband, however, proposed that he receive an unequal distribution of farms, with Home Place, Bailey, and Davisson with a total of forty-seven-and-a-half water shares going to him and Ehrlich with thirteen water shares, going to wife.

Because of these disparities, the parties' closing statements do not constitute a stipulation.

¶ 25 Although we agree that each party consistently asserted that the Ehrlich farm should be allocated between thirteen and thirteen-and-a-half water shares, we do not agree that these assertions created a stipulation from which the court could not deviate. *See In re Marriage of Tanous*, 730 P.2d 907, 909 (Colo. App. 1986) (district court is not bound by a property division made in a separation agreement). This is especially so considering the court's statement that it heard no testimony about the water shares, that it had only Mr. Axton's report to rely on, and that it attempted to divide the marital estate equitably, which did not necessarily mean equally.

¶ 26 Additionally, we note that the district court found that several "stipulations" in closing arguments and the parties' proposed findings of fact were contradictory and "not correct." Although the court made these statements in the context of dividing the parties' businesses, rather than the real property, its comments illustrate the complex and vast nature of the parties' estate and its justified hesitation to rely on either party's characterization as a "stipulation."

B.    The Court Did Not Err by Not Adjusting the Property Values

¶ 27    Husband next asserts that the court's correction of the water shares award was error because the reallocation of water shares "resulted in reallocated valuations of real properties."

¶ 28    As we understand his argument, husband claims that by awarding sixteen rather than thirteen water shares to wife, the court increased the value of the Ehrlich farm and decreased the value of the remaining farms which were assigned to him. And, he further argues, the court did not then offset that diminution in some other way. Again, we reject this argument.

¶ 29    The district court stated that its intent when it issued permanent orders was to award wife sixteen shares of water along with the Ehrlich farm, as it noted on the accompanying spreadsheet. This therefore left forty-four-and-a-half total shares of water allocated to husband. This was a proper correction made under C.R.C.P. 60(a). *See Diamond Back Servs., Inc.*, 961 P.2d at 1136 ("[R]elief under C.R.C.P. 60(a) is limited to cases in which the trial court originally intended to make the award granted by corrective amendment.").

¶ 30    Husband asserts that the district court's actual intent was to allocate the water shares per Mr. Axton's report on a per acre basis by farmland. But he provides no support for this assertion. The court stated its intent was to divide the estate equitably, including allocating sixteen water shares to wife with the Ehrlich farm, and allocating the Home Place, Bailey, and Davisson farms with forty-four-and-a-half water shares to husband.

¶ 31    Moreover, in her briefing related to husband's C.R.C.P. 59 motion, wife suggested to the court that she pay for any water shares allocated to her beyond Mr. Axton's recommendation. The court declined to change its allocation of the properties or the water shares when it ruled on that motion. And presumably it was aware of wife's suggestion that the equalization payment should be adjusted when it later issued the Rule 60(a) clarification but chose not to change the equalization payment. We note that in the same order where the court addressed the water share clarification, the court also settled a dispute about various equipment divided in the permanent orders and adjusted the equalization payment accordingly. As such, had the court wanted to adjust the equalization payment to account for wife receiving sixteen water

shares, it easily could have accomplished that. But it did not —
evidencing its intent from the beginning to allocate wife sixteen
water shares.

¶ 32     Lastly, husband argues that the district court wanted to
amend its findings or order pursuant to C.R.C.P. 59(a)(3) and (4),
but that it lacked jurisdiction under those provisions, so it
inappropriately "corrected" its order under C.R.C.P. 60(a), instead.
But as discussed, the court's order reconciling the difference
between its written order and accompanying spreadsheet is a
permitted action under C.R.C.P. 60(a). *See Cespedes*, 895 P.2d at
1177 (C.R.C.P. 60(a) may be used to resolve inconsistencies in a
court's orders).

## C.     Any Error Was De Minimus

¶ 33     Lastly, husband asserts that even if the court intended all
along to allocate sixteen water shares to wife with the Ehrlich Farm,
this decision was arbitrary because no evidence supports that the
Ehrlich Farm needs sixteen water shares to operate. We note, as
did the district court, that water shares were not discussed at the
permanent orders hearing and, accordingly, all the court had to rely

on was Mr. Axton's report, which recommended around thirteen shares for the Ehrlich Farm.

¶ 34    To the extent that the court improperly chose to allocate sixteen shares to wife, any such error is de minimus and therefore harmless.

¶ 35    Mr. Axton's report opined generally that if separated from the land, the water shares would be valued in the range of $20,000 to $25,000 per share.  Thus, even if the court erred by allocating sixteen shares of water to wife, any such error was harmless as it amounted to only $60,000 to $75,000 — or around one percent of the parties' more than $7,000,000 marital estate.  *See Balanson*, 25 P.3d at 36 (where an error affects only a small percentage of the overall marital estate, it may be deemed to have been harmless and thus does not require reversal).

## IV.    Attorney Fees

¶ 36    Wife requests an award of attorney appellate fees, arguing that husband's appeal was frivolous.  C.A.R. 39.1; § 13-17-102(2), C.R.S. 2025.  We deny this request.

¶ 37    Although husband did not prevail in his appeal, it was not so lacking in justification as to warrant an award of fees.  *See Glover v.*

*Serratoga Falls LLC*, 2021 CO 77, ¶ 70 (noting that awards of appellate attorney fees for frivolous appeals should be reserved for "clear and unequivocal" cases involving "egregious conduct" (citation omitted)).

## V.    Disposition

¶ 38    The judgment is affirmed.

JUDGE BROWN and JUDGE SCHUTZ concur.